UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA

- against -                              Case Number:  2:03-CR-723-TCP-2

WILLIAM RUBENSTEIN,                      The Honorable Thomas C. Platt

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x




GOVERNMENT'S REQUESTS TO CHARGE






JOHN C. CRUDEN                            JOHN A. DiCICCO
Acting Assistant Attorney General         Acting Assistant Attorney General
Environment and Natural Resources Division  Tax Division
United States Department of Justice        United States Department of Justice


By:   JAMES B. NELSON          By:   MARK KOTILA
      Trial Attorney                 Trial Attorney
      Environmental Crimes Section   Northern Criminal Enforcement Section
      United States Department of Justice  United States Department of Justice
      601 D Street NW, Room 2140     601 D Street NW, Room 7816
      Washington, DC 20004           Washington, DC 20004

<u>PRELIMINARY STATEMENT</u>

Pursuant to Fed. R. Crim. P. 30, the government respectfully requests that the Court include the attached instructions in its charge to the jury.  The government also respectfully requests leave to offer additional instructions as may become appropriate during the trial.

## REQUEST NO. ONE

### General Request

The government requests that the Court charge the jury in its usual manner on the following subjects:

(a)     The Functions of the Court and the Jury.

(b)     Equality of the Parties before the Court.

(c)     Jury Communications with Lawyers and the Court.

(d)     Presumption of Innocence.

(e)     Burden of Proof, Reasonable Doubt, and Number of Witnesses Called.

(f)     Definitions of "knowingly" and "intentionally."

(g)     Function of Indictment and What is Not Evidence.

(h)     Direct and Circumstantial Evidence.

(i)     Permissible Inferences From Evidence.

(j)     Objections.

(k)     Government Witnesses.

(l)     No Inference to Be Drawn From Defendant's Failure to Testify (If Applicable).

(m)     Right to See Exhibits and Have Testimony Read During Deliberations.

(n)     Questioning Wisdom of Law or Basing Verdict on Sympathy or Prejudice Prohibited.

(o)     Credibility of Witnesses and Discrepancies in Testimony.

<u>REQUEST NO. TWO</u>

<u>Previous Trial</u>

You have heard testimony about a previous trial of this case.  The fact that this is the second trial is irrelevant to your consideration of this case.  You should not consider the fact of a previous trial in any way.  Your verdict in this case must be based solely upon the facts as you find them from the evidence introduced at this trial in accordance with the law as I charge you.


<u>Authority</u>:        1 L. Sand, *et al*., <u>Modern Federal Jury Instructions</u>, (1999) (hereinafter "Sand"),

Form Instruction 2-13

REQUEST NO. THREE

Jury to Consider Only This Defendant

You are about to be asked to decide whether or not the government has proven beyond a reasonable doubt the guilt of this defendant.  You are not being asked whether any other person has been proven guilty.  Your verdict should be based solely upon the evidence or lack of evidence as to this defendant, in accordance with my instructions and without regard to whether the guilt of other people has or has not been proven.

Authority:      Sand, Form Instruction 2-18

REQUEST NO. FOUR

Count One:  The Indictment and the Statute

Count One of the Indictment charges that, from on or about July 1997 until on or about November 2000, in the Eastern District of New York and elsewhere, the defendant WILLIAM RUBENSTEIN, together with co-conspirator Dov Shellef and others, came to some type of agreement or understanding to defraud the United States by impeding, impairing, obstructing and defeating the lawful function of the Internal Revenue Service, in the ascertainment, computation, assessment, and collection of excise tax due on domestic sales of an ozone depleting chemical, namely CFC-113.

The relevant statute on this subject is 18 U.S.C. § 371.  It provides:

If two or more persons conspire . . . to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each [is guilty of a crime].

Authority:      Sand, Form Instruction 19-11

REQUEST NO. FIVE

Count One:  Conspiracy to Defraud the United States

In Count One of the Indictment, the defendant is accused of having been a member of a conspiracy to defraud the United States government.  A conspiracy is a kind of criminal partnership--a combination or agreement of two or more persons to join together to accomplish some unlawful purpose.

Congress has deemed it appropriate to make conspiracy, standing alone, a separate crime even if the conspiracy is not successful.  This is because collective criminal activity poses a greater potential threat to the public's safety and welfare than individual conduct and increases both the likelihood of success of a particular criminal venture.

In this regard, the charge of conspiracy to defraud the government does not mean that one of the illegal objects must be to cause the government to suffer a loss of money or property as a consequence of the conspiracy.  It would also be a conspiracy to defraud if one of the objects was to obstruct, interfere, impair, impede or defeat the legitimate functioning of the government through fraudulent or dishonest means, as I will define these terms.

Authority:    Sand, Form Instruction 19-12

United States v. Shellef and Rubenstein, 507 F.3d 82 (2d Cir. 2007)

7

<u>REQUEST NO. SIX</u>

<u>Count One:  Elements of Conspiracy to Defraud the United States</u>

In order to satisfy its burden of proof as to Count One, the government must establish each of the following four essential elements beyond a reasonable doubt:

(1)     The defendant entered into an agreement with at least one person

(2)     to obstruct a lawful function of the government

(3)     by deceitful or dishonest means, and

(4)     at least one overt act was committed in furtherance of the conspiracy.


<u>Authority</u>:        <u>United States v. Shellef and Rubenstein</u>, 507 F.3d 82, 107 (2d Cir. 2007)

<u>United States v. Ballistrea</u>, 101 F.3d 827, 832  (2d Cir. 1996)

## REQUEST NO. SEVEN

### Count One:  Existence of Agreement

The first element which the government must prove beyond a reasonable doubt to establish the offense of conspiracy is that two or more persons entered the unlawful agreement charged in the Indictment.

In order for the government to satisfy this element, you need not find that the alleged members of the conspiracy met together and entered into any express or formal agreement. Similarly, you need not find that the alleged conspirators stated, in words or writing, what the scheme was, its object or purpose, or every precise detail of the scheme or the means by which its object or purpose was to be accomplished.  What the government must prove is that there was a mutual understanding, either spoken or unspoken, between two or more people to cooperate with each other to accomplish an unlawful act.

You may, of course, find that the existence of an agreement to disobey or disregard the law has been established by direct proof.  However, since conspiracy is, by its very nature, characterized by secrecy, you may also infer its existence from the circumstances of this case and the conduct of the parties involved.

In a very real sense, then, in the context of conspiracy cases, actions often speak louder than words.  In this regard, you may, in determining whether an agreement existed here, consider the actions and statements of all of those you find to be participants as proof that a common design existed on the part of the persons charged to act together to accomplish an unlawful purpose.

Authority:      Sand, Form Instruction 19-4

### REQUEST NO. EIGHT

<u>Count One:  Membership in the Conspiracy</u>

To establish the offense of conspiracy charged in Count One, the government must prove beyond a reasonable doubt that the defendant knowingly, willfully and voluntarily became a member of the conspiracy.

If you are satisfied that the conspiracy charged in the Indictment existed, you must next ask yourselves who the members of that conspiracy were. In deciding whether the defendant was, in fact, a member of the conspiracy, you should consider whether the defendant knowingly and willfully joined the conspiracy.  Did he participate in it with knowledge of its unlawful purpose and with the specific intention of furthering its business or objective as an associate or worker?

In that regard, it has been said that in order for a defendant to be deemed a participant in a conspiracy, he must have had a stake in the venture or its outcome. You are instructed that, while proof of a financial interest in the outcome of a scheme is not essential, if you find that the defendant had such an interest, that is a factor which you may properly consider in determining whether or not the defendant was a member of the conspiracy charged in the Indictment.

As I mentioned a moment ago, before the defendant can be found to have been a conspirator, you must first find that he knowingly joined in the unlawful agreement or plan. The key question, therefore, is whether the defendant joined the conspiracy with an awareness of at least some of the basic aims and purposes of the unlawful agreement.

It is important for you to note that the defendant's participation in the conspiracy must be established by independent evidence of his own acts or statements, as well as those of the other alleged co-conspirators, and the reasonable inferences which may be drawn from them.

The defendant's knowledge is a matter of inference from the facts proved.  In that

connection, I instruct you that to become a member of the conspiracy, the defendant need not have known the identities of each and every other member, nor need he have been apprised of all of their activities.  Moreover, the defendant need not have been fully informed as to all of the details, or the scope, of the conspiracy in order to justify an inference of knowledge on his part. Furthermore, the defendant need not have joined in all of the conspiracy's unlawful objectives.

The extent of a defendant's participation has no bearing on the issue of a defendant's guilt. A conspirator's liability is not measured by the extent or duration of his participation. Indeed, each member may perform separate and distinct acts and may perform them at different times. Some conspirators play major roles, while others play minor parts in the scheme. An equal role is not what the law requires. In fact, even a single act may be sufficient to draw the defendant within the ambit of the conspiracy.

I want to caution you, however, that the defendant's mere presence at the scene of the alleged crime does not, by itself, make him a member of the conspiracy.  Similarly, mere association with one or more members of the conspiracy does not automatically make the defendant a member.  A person may know, or be friendly with, a criminal, without being a criminal himself. Mere similarity of conduct or the fact that they may have assembled together and discussed common aims and interests does not necessarily establish proof of the existence of a conspiracy.

I also want to caution you that mere knowledge or acquiescence, without participation, in the unlawful plan is not sufficient. Moreover, the fact that the acts of a defendant, without knowledge, merely happen to further the purposes or objectives of the conspiracy, does not make the defendant a member. More is required under the law.  What is necessary is that the defendant must have participated with knowledge of at least some of the purposes or objectives of the

11

conspiracy and with the intention of aiding in the accomplishment of those unlawful ends.

In sum, the defendant, with an understanding of the unlawful character of the conspiracy, must have intentionally engaged, advised or assisted in it for the purpose of furthering the illegal undertaking. He thereby becomes a knowing and willing participant in the unlawful agreement-- that is to say, a conspirator.

Authority:      Sand, Form Instruction 19-6

REQUEST NO. NINE

Count One:  Commission of Overt Act

To establish the offense of conspiracy as alleged in Count One, the government must prove beyond a reasonable doubt that at least one of the overt acts charged in the Indictment was knowingly committed by at least one of the conspirators, at or about the time and place alleged.

Count One of the Indictment charges that the following overt acts were committed within the Eastern District of New York and elsewhere.

OVERT ACTS

July 14, 1997 Sale

a.  On or about July 14, 1997, co-conspirator Dov Shellef caused a purchase order from the Hayward company for the purchase of 2,760 pounds of CFC–113 to be faxed from his office in Great Neck, New York to defendant WILLIAM RUBENSTEIN, and requested that RUBENSTEIN instruct the trucking company to collect the invoiced amount on behalf of Poly Systems and to deliver the payment check to RUBENSTEIN.

b.  On or about July 14, 1997, on behalf of Poly Systems, defendant WILLIAM RUBENSTEIN caused 2,760 pounds of virgin Elf Atochem CFC-113 to be shipped to the Hayward company from his warehouse facilities in Bayonne, New Jersey, via a commercial trucking company.

c.  On or about July 14, 1997, defendant WILLIAM RUBENSTEIN caused Dunbar Sales to create an invoice to Poly Systems falsely marked "FOR EXPORT ONLY" for the 2,760 pounds of virgin Elf Atochem CFC-113 shipped to the Hayward company that day.

13

August 29, 1997 Sale

d.  On or about August 27, 1997, co-conspirator Dov Shellef caused a Polytuff purchase order to be sent from his office in Great Neck, New York to defendant WILLIAM RUBENSTEIN for 2,760 pounds of CFC-113, falsely described as "Reclaimed", for shipment to a company located in Gainesville, Florida (the "Florida company").

e.  On or about August 29, 1997, defendant WILLIAM RUBENSTEIN caused 2,760 pounds of virgin Elf Atochem CFC-113 to be delivered from his warehouse facility in Bayonne, New Jersey to a commercial trucking company for shipment to the Florida company.

f.  On or about August 29, 1997, defendant WILLIAM RUBENSTEIN caused Dunbar Sales to create an invoice to Poly Systems falsely describing as "Reclaimed" and "FOR EXPORT ONLY" the 2,760 pounds of virgin Elf Atochem CFC-113 shipped to the Florida company that day.

September 5, 1997 Sale

g.  On or about September 5, 1997, co-conspirator Dov Shellef caused a Poly Systems purchase order to be sent from his office in Great Neck, New York to defendant WILLIAM RUBENSTEIN for 3,450 pounds of CFC-113, falsely described as "Reclaimed", for shipment to a domestic company located in Oakland, California (the "Oakland company").

h.  On or about September 5, 1997, defendant WILLIAM RUBENSTEIN caused 3,450 pounds of virgin Elf Atochem CFC-113 to be shipped to the Oakland company from his warehouse facilities in Bayonne, New Jersey, via a

14

commercial trucking company.

i.  On or about September 5, 1997, defendant WILLIAM RUBENSTEIN caused a Dunbar Sales invoice to Poly Systems to be created falsely describing as "Reclaimed" and "FOR EXPORT ONLY" the 2,760 pounds of virgin Elf Atochem CFC-113 shipped to the Oakland company that day.

September 9, 1998 Sale

j.  On or about September 8, 1998, co-conspirator Dov Shellef caused a Poly Systems purchase order to be faxed from his office in Great Neck, New York to defendant WILLIAM RUBENSTEIN for 10,350 pounds of CFC-113 falsely described as "RECLAIMED" for shipment to a company located in Middlesex, New Jersey (the "Middlesex company").

k.  On or about September 9, 1998, defendant WILLIAM RUBENSTEIN caused 10,350 pounds of virgin Elf Atochem CFC-113 to be shipped to the Middlesex company from his warehouse facilities in Bayonne, New Jersey, via a commercial trucking company.

l.  On or about September 9, 1998, defendant WILLIAM RUBENSTEIN caused a Dunbar Sales invoice to Poly Systems to be created falsely identifying as "RECLAIMED" and "FOR EXPORT ONLY" the 10,350 pounds of virgin Elf Atochem CFC-113 shipped to the Middlesex company that day.

December 7, 1998 Sale

m.  On or about December 5, 1998, co-conspirator Dov Shellef caused to be faxed from his office in Great Neck, New York to defendant WILLIAM

15

RUBENSTEIN and one of RUBENSTEIN's employees instructions to remove all reference to Allied Signal from 12 drums of CFC-113 and to ship them to the Hayward company.

n.  On or about December 7, 1998, defendant WILLIAM RUBENSTEIN caused 12 drums of Allied Signal CFC-113 to be shipped to the Hayward company from his warehouse facility in Bayonne, New Jersey, as instructed by co-conspirator Dov Shellef.

o.  On or about December 7, 1998, defendant WILLIAM RUBENSTEIN caused an invoice to be sent to co-conspirator Dov Shellef for cleaning the 12 drums of Allied Signal CFC-113 shipped to the Hayward company on December 7, 1998.

May 7, 1999 Sale

p.  On or about May 7, 1999, co-conspirator Dov Shellef instructed Five Star to ship 4 drums of Allied Signal CFC-113 to the Hayward company and to fax a copy of the bill of lading signed by the customer.

q.  On or about May 7, 1999, co-conspirator Dov Shellef sent an invoice from his office in Great Neck, New York to the Hayward company for 4 drums of CFC-113 with special instructions to remit payment by wire transfer to an account at HSBC bank.

August 26, 1999 Sale

16

r.  On or about August 25, 1999, co-conspirator Dov Shellef instructed Five Star to ship four drums of Allied Signal CFC-113 to the Hayward company and to fax a copy of the bill of lading signed by the customer.

s.  On or about August 26, 1999, co-conspirator Dov Shellef sent an invoice from his office in Great Neck, New York to the Hayward company for four drums of CFC-113 with special instructions to remit payment by wire transfer to an account at Commercial Bank of New York.

<u>February 7, 2000 Shipments</u>

t.  On or about February 7, 2000, defendant WILLIAM RUBENSTEIN caused to be shipped 60 drums of Allied Signal CFC-113 to Five Star from his warehouse facility in Bayonne, New Jersey, as instructed by co-conspirator Dov Shellef.

u.  On or about February 7, 2000, defendant WILLIAM RUBENSTEIN caused an invoice to be sent to co-conspirator Dov Shellef for cleaning the 60 drums of Allied Signal CFC-113 shipped to Five Star on February 7, 2000.

In order for the government to satisfy this element, it is not required that all of the overt acts alleged in the Indictment be proven.

Similarly, you need not find that the defendant in this case committed the overt act.  It is sufficient for the government to show that one of the conspirators knowingly committed an overt act in furtherance of the conspiracy, since such an act becomes, in the eyes of the law, the act of all of the members of the conspiracy.

You are further instructed that the overt act need not have been committed at precisely

17

the time alleged in the Indictment. It is sufficient if you are convinced beyond a reasonable doubt, that it occurred at or about the time and place stated.

Finally, you must find that either the agreement was formed or that an overt act was committed in Eastern District of New York, which includes Staten Island, Brooklyn, Queens, Nassau and Suffolk counties.

Authority:      Sand, Form Instruction 19-7

<u>REQUEST NO. TEN</u>

<u>Count One:  Commission of Overt Act in Furtherance of the Conspiracy</u>

The government must prove beyond a reasonable doubt as to Count One that the overt act was committed for the purpose of carrying out the unlawful agreement.

In order for the government to satisfy this element, it must prove, beyond a reasonable doubt, that at least one overt act was knowingly and willfully done, by at least one conspirator, in furtherance of some object or purpose of the conspiracy, as charged in the Indictment.  In this regard, you should bear in mind that the overt act, standing alone, may be an innocent, lawful act. Frequently, however, an apparently innocent act sheds its harmless character if it is a step in carrying out, promoting, aiding or assisting the conspiratorial scheme. You are therefore instructed that the overt act does not have to be an act which, in and of itself is criminal or constitutes an objective of the conspiracy.

<u>Authority</u>:        Sand, Form Instruction 19-8

## REQUEST NO.  ELEVEN

### Count One:  Acts and Declarations of Co-Conspirators

You will recall that I have admitted into evidence against the defendants the acts and statements of others because these acts and statements were committed by persons who, the government charges, were also confederates or co-conspirators of the defendants on trial.

The reason for allowing this evidence to be received against the defendants has to do with the nature of the crime of conspiracy.  A conspiracy is often referred to as a partnership in crime. Thus, as in other types of partnerships, when people enter into a conspiracy to accomplish an unlawful end, each and every member becomes an agent for the other conspirators in carrying out the conspiracy.

Accordingly, the reasonably foreseeable acts, declarations, statements and omissions of any member of the conspiracy and in furtherance of the common purpose of the conspiracy, are deemed, under the law, to be the acts of all of the members, and all of the members are responsible for such acts, declarations, statements and omissions.

If you find, beyond a reasonable doubt, that the defendant whose guilt you are considering was a member of the conspiracy charged in the Indictment, then, any acts done or statements made in furtherance of the conspiracy by persons also found by you to have been members of that conspiracy, may be considered against that defendant.  This is so even if such acts were done and statements were made in the defendant's absence and without his knowledge.

However, before you may consider the statements or acts of a co-conspirator in deciding the issue of a defendant's guilt, you must first determine that the acts and statements were made during the existence, and in furtherance, of the unlawful scheme.  If the acts were done or the statements made by someone whom you do not find to have been a member of the conspiracy or

20

if they were not done or said in furtherance of the conspiracy, they may be considered by you as evidence only against the member who did or said them.

Authority:      Sand, Form Instruction 19-9

## REQUEST NO. TWELVE

### Count One:  Use of Third Parties

A conspiracy to defraud the United States may be effected through the use of third parties.  The broad language of 18 U.S.C. § 371 covering conspiracies to defraud "in any manner for any purpose" is not limited by the method used to defraud the United States.  A method that makes use of third parties to reach and defraud the United States is within the scope of 18 U.S.C. § 371.

United States v. Tanner, 483 U.S. 107, 129 (1987) (modified)

22

REQUEST NO. THIRTEEN

Count One:  Conspiracy

The defendant can be convicted of violating 18 U.S.C. § 371, conspiracy to defraud the

United States of excise tax due on domestic sales of CFC-113, despite the fact that they did not

have a legal obligation to collect the excise tax in the first instance.


United States v. Nersesian, 824 F.2d 1294, 1313 (2d Cir.), cert. denied, 484 U.S. 958 (1987)

(modified)

United States v. Shellef and Rubenstein, 507 F.3d 82, 105 (2d Cir. 2007)

## REQUEST NO. FOURTEEN

### Count One:  Impossibility of Success

It is not a defense to a conspiracy charge that the object of the conspiracy could not be achieved because of circumstances that the conspirators did not know about.  Thus, you may find the defendants guilty of conspiracy even though it was impossible for them to carry out their plan successfully.


<u>Authority</u>:        Sand, Form Instruction 19-10.1

<u>REQUEST NO. FIFTEEN</u>

<u>Counts Five through Nine, Eleven, Thirteen through Seventeen, Nineteen through Fifty</u>

<u>(Wire Fraud):  The Indictment and the Statute</u>

The Indictment charges that the defendant devised a scheme to defraud (*e.g.*, by means of false representations) and in furtherance of that scheme knowingly caused the interstate wires to be used.  Specifically, the Indictment charges that, in or about and between September 1998 and November 2000, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, defendant WILLIAM RUBENSTEIN and co-conspirator Dov Shellef knowingly and intentionally devised a scheme and artifice to defraud Allied Signal and to obtain money and property from Allied Signal by means of materially false and fraudulent pretenses, representations and promises.  That is, they misrepresented the destination of the CFC-113 to induce Allied Signal to sell the product without paying the excise tax to the Internal Revenue Service or including the tax in the price it charged.

The Indictment reads in relevant part:

47.  The allegations contained in paragraphs 1 through 8 and 10 through 40 are realleged and incorporated as if fully set forth in this paragraph.

\* \* \*

55.  For the purpose of executing this scheme and artifice, and attempting to do so, on or about the dates set forth below, co-conspirator Dov Shellef and defendant WILLIAM RUBENSTEIN did knowingly and intentionally transmit and cause to be transmitted by means of wire communication in interstate commerce the following writings, signs, signals, pictures and sounds:

| Count | Date | Origin | Destination | Description |
|-------|------|--------|-------------|-------------|
| 5 | 11/30/98 | HSBC, Great Neck, NY | Corestates Bank Philadelphia, PA | Wire Transfer |
| 6 | 12/5/98 | Poly Systems, Great Neck, NY | Dunbar Sales, Bayonne, NJ | Shipping Instructions |
| 7 | 1/20/99 | HSBC, Great Neck, NY | Corestates Bank Philadelphia, PA | Wire Transfer |
| 8 | 1/26/99 | Poly Systems, Great Neck, NY | Dunbar Sales, Bayonne, NJ | Shipping Instructions |
| 9 | 3/11/99 | HSBC, Great Neck, NY | Corestates Bank Philadelphia, PA | Wire Transfer |
| 11 | 3/15/99 | Poly Systems, Great Neck, NY | Dunbar Sales, Bayonne, NJ | Shipping Instructions |
| 13 | 4/27/99 | HSBC, Great Neck, NY | Corestates Bank Philadelphia, PA | Wire Transfer |
| 14 | 6/14/99 | HSBC, Great Neck, NY | Corestates Bank Philadelphia, PA | Wire Transfer |
| 15 | 8/26/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 16 | 8/30/99 | Poly Systems, Great Neck, NY | Dunbar Sales, Bayonne, NJ | Shipping Instructions |
| 17 | 8/31/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 19 | 9/14/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 20 | 9/15/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 21 | 9/16/99 | Five Star, San Leandro, CA | Poly System, Great Neck, NY | Bill of Lading |

26

| Count | Date | Origin | Destination | Description |
|---|---|---|---|---|
| 22 | 9/21/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 23 | 9/24/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 24 | 9/30/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 25 | 10/04/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 26 | 10/12/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 27 | 10/14/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 28 | 10/18/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 29 | 10/19/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 30 | 10/22/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 31 | 10/27/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 32 | 10/29/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 33 | 11/02/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |

| Count | Date | Origin | Destination | Description |
|---|---|---|---|---|
| 34 | 11/05/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 35 | 11/12/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 36 | 11/18/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 37 | 11/22/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 38 | 11/23/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 39 | 11/29/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 40 | 12/02/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 41 | 12/07/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 42 | 12/13/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 43 | 12/16/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 44 | 12/20/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 45 | 12/28/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |

| Count | Date | Origin | Destination | Description |
|-------|------|--------|-------------|-------------|
| 46 | 1/20/00 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 47 | 1/25/00 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 48 | 2/01/00 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 49 | 2/09/00 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 50 | 2/11/00 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |

The relevant statute on this subject is section 1343 of Title 18 of the United States Code.

It provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire radio or television communication in interstate or foreign commerce, any writings, signs, signals, pictures or sounds for the purpose of executing such scheme or artifice shall be [guilty of a crime].

Authority:   Sand, Form Instruction 44-1

United States v. Shellef and Rubenstein, 507 F.3d 82, 107-09 (2d Cir. 2007)

REQUEST NO. SIXTEEN

Counts Five through Nine, Eleven, Thirteen through Seventeen, Nineteen through to Fifty

(Wire Fraud):  Elements

29

In order to sustain this charge, the government must prove each of the following elements beyond a reasonable doubt:

First, that there was a scheme or artifice to defraud or to obtain money or property by materially false and fraudulent pretenses, representations or promises, as alleged in the Indictment;

Second, that the defendant knowingly and willfully participated in the scheme or artifice to defraud, with knowledge of its fraudulent nature and with specific intent to defraud or that he knowingly and intentionally aided and abetted others in the scheme; and

Third, that in execution of that scheme, the defendant used or caused the use of the interstate wires as specified in the Indictment.

Authority:      Sand, Form Instruction 44-3

United States v. Shellef and Rubenstein, 507 F.3d 82, 107 (2d Cir. 2007)

30

<u>REQUEST NO. SEVENTEEN</u>

<u>Counts Five through Nine, Eleven, Thirteen through Seventeen, Nineteen through to Fifty</u>

<u>(Wire Fraud):  Existence of a Scheme or Artifice to Defraud</u>

The first element that the government must prove beyond a reasonable doubt is that there was a scheme or artifice to defraud [the victim] of money or property by means of false or fraudulent pretenses, representations or promises.

A "scheme or artifice" is merely a plan for the accomplishment of an object.

A scheme to defraud is any plan, device, or course of action to obtain money or property by means of false or fraudulent pretenses, representations or promises reasonably calculated to deceive persons of average prudence.

"Fraud" is a general term which embraces all the various means by which human ingenuity can devise and which are resorted to by an individual to gain an advantage over another by false representations, suggestions or suppression of the truth, or deliberate disregard for the truth.

Thus, a "scheme to defraud" is merely a plan to deprive another of money or property by trick, deceit, deception or swindle.

The scheme to defraud is alleged to have been carried out by making false (or fraudulent) statements (representations)(claims)(documents).

A statement, representation, claim or document is false if it is untrue when made and was then known to be untrue by the person making it or causing it to be made.

A representation or statement is fraudulent if it was falsely made with the intention to deceive.

Deceitful statements of half truths or the concealment of material facts, and the

31

expression of an opinion not honestly entertained may also constitute false or fraudulent statements under the statute.

The deception need not be premised upon spoken or written words alone. The arrangement of the words, or the circumstances in which they are used may convey the false and deceptive appearance. If there is deception, the manner in which it is accomplished is immaterial.

The false or fraudulent representation (or failure to disclose) must relate to a material fact or matter.  A material fact is one which would reasonably be expected to be of concern to a reasonable and prudent person in relying upon the representation or statement in making a decision (e.g., with respect to a proposed investment).

This means that if you find a particular statement of fact to have been false, you must determine whether that statement was one that a reasonable person or investor might have considered important in making his or her decision.  The same principle applies to fraudulent half truths or omissions of material facts.

The representations which the government charges were made as part of the scheme to defraud are set forth in paragraphs 47-55 of the Indictment, which I have already read to you.  It is not required that every misrepresentation charged in the Indictment be proved.  It is sufficient if the prosecution proves beyond a reasonable doubt that one or more of the alleged material misrepresentations were made in furtherance of the alleged scheme to defraud.

In addition to proving that a statement was false or fraudulent and related to a material fact, in order to establish a scheme to defraud, the government must prove that the alleged scheme contemplated depriving another of money or property.

However, the government is not required to prove that the defendant himself originated

the scheme to defraud.  Furthermore, it is not necessary that the government prove that the

defendant actually realized any gain from the scheme or that the intended victim actually

suffered any loss.

A scheme to defraud need not be shown by direct evidence, but may be established by all

of the circumstances and facts in the case.

If you find that the government has sustained its burden of proof that a scheme to

defraud, as charged, did exist, you next should consider the second element.


Authority:       Sand, Form Instruction 44-4

REQUEST NO. EIGHTEEN

Counts Five through Nine, Eleven, Thirteen through Seventeen, Nineteen through to Fifty

(Wire Fraud):  Participation in Scheme with Intent

The second element that the government must prove beyond a reasonable doubt is that the defendant participated in the scheme to defraud knowingly, willfully and with specific intent to defraud.

"Knowingly" means to act voluntarily and deliberately, rather than mistakenly or inadvertently.

"Willfully" means to act knowingly and purposely, with an intent to do something the law forbids; that is to say, with bad purpose either to disobey or to disregard the law.

"Intent to defraud" means to act knowingly and with the specific intent to deceive, for the purpose of causing some financial or property loss to another.

The question of whether a person acted knowingly, willfully and with intent to defraud is a question of fact for you to determine, like any other fact question.  This question involves one's state of mind.

Direct proof of knowledge and fraudulent intent is almost never available.  It would be a rare case where it could be shown that a person wrote or stated that as of a given time in the past he committed an act with fraudulent intent.  Such direct proof is not required.

The ultimate facts of knowledge and criminal intent, though subjective, may be established by circumstantial evidence, based upon a person's outward manifestations, his words, his conduct, his acts and all the surrounding circumstances disclosed by the evidence and the rational or logical inferences that may be drawn from them.

Circumstantial evidence, if believed, is of no less value than direct evidence.  In either

34

case, the essential elements of the crime must be established beyond a reasonable doubt.

Since an essential element of the crime charged is intent to defraud, it follows that good faith on the part of the defendant is a complete defense to a charge of wire fraud.  A defendant, however, has no burden to establish a defense of good faith.  The burden is on the government to prove fraudulent intent and the consequent lack of good faith beyond a reasonable doubt.

Under the wire fraud statute, even false representations or statements, or omissions of material facts, do not amount to a fraud unless done with fraudulent intent. However misleading or deceptive a plan may be, it is not fraudulent if it was devised or carried out in good faith.  An honest belief in the truth of the representations made by a defendant is a good defense, however inaccurate the statements may turn out to be.

As a practical matter, then, in order to sustain the charges against the defendant, the government must establish beyond a reasonable doubt that he knew that his conduct as a participant in the scheme was calculated to deceive and, nonetheless, he associated himself with the alleged fraudulent scheme for the purpose of causing some loss to another.

To conclude on this element, if you find that the defendant was not a knowing participant in the scheme or that he lacked the specific intent to defraud, you should acquit him.  On the other hand, if you find that the government has established beyond a reasonable doubt not only the first element, namely the existence of the scheme to defraud, but also this second element, that the defendant was a knowing participant and acted with specific intent to defraud, and if the government also establishes the third element, as to which I am about to instruct you, then you have a sufficient basis upon which to convict the defendant.

Authority:        Sand, Form Instruction 44-5 (modified)

35

REQUEST NO. NINETEEN

Counts Five through Nine, Eleven, Thirteen through Seventeen, Nineteen through to Fifty

(Wire Fraud):  Use of the Wires

The third and final element that the government must establish beyond a reasonable doubt is the use of an interstate or international wire communication in furtherance of the scheme to defraud.

The wire communication must pass between two or more states as, for example, a telephone call between New York and New Jersey; or it must pass between the United States and a foreign country, such as a telephone call between New York and London.  A wire communication also includes a wire transfer of funds between banks in different states or between a bank in the United States and a bank in a foreign country and the transmission of a document by fax between two different states.

The use of the wires need not itself be a fraudulent representation. It must, however, further or assist in the carrying out of the scheme to defraud.

It is not necessary for the defendant to be directly or personally involved in the wire communication, as long as the communication was reasonably foreseeable in the execution of the alleged scheme to defraud in which the defendant is accused of participating.

In this regard, it is sufficient to establish this element of the crime if the evidence justifies a finding that the defendant caused the wires to be used by others.  This does not mean that the defendant must specifically have authorized others to make the call or send a fax.  When one does an act with knowledge that the use of the wires will follow in the ordinary course of business or where such use of the wires can reasonably be foreseen, even though not actually intended, then he causes the wires to be used.  The government contends that it was reasonably

36

foreseeable that the wires would be used in the ordinary course of business to send faxes and therefore that the defendant caused the use of the wires.

With respect to the use of the wires, the government must establish beyond a reasonable doubt the particular use charged in the Indictment.  However, the government does not have to prove that the wires were used on the exact date charged in the Indictment.  It is sufficient if the evidence establishes beyond a reasonable doubt that the wires were used on a date substantially similar to the dates charged in the Indictment.

Authority:       Sand, Form Instruction 44-7

<u>REQUEST NO. TWENTY</u>

<u>Counts Five through Nine, Eleven, Thirteen through Seventeen, Nineteen through to Fifty:</u>

<u>Wire Fraud</u>

A victim's negligence in permitting a crime to take place does not excuse the defendant from culpability for his substantive offense.


<u>Authority</u>:     <u>United States v. Allen</u>, 201 F.3d 163, 167 (2d Cir. 2000) (modified)

<u>United States v. Thomas</u>, 377 F.3d 232, 243-44 (2d Cir. 2004) (modified)

REQUEST NO. TWENTY-ONE

Aiding and Abetting

A person may be convicted of committing a crime if you find beyond a reasonable doubt that he aided and abetted or caused the commission of the crime.  Section 2 of Title 18 of the United States Code provides:

> (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

> (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

Under the aiding and abetting statute, it is not necessary for the government to show that a defendant himself physically committed the crime with which he is charged in order for the government to sustain its burden of proof.  A person who aids or abets another to commit an offense is just as guilty of that offense as if he committed it himself.

Accordingly, you may find a defendant guilty of the offense charged if you find beyond a reasonable doubt that the government has proven that another person actually committed the offense with which the defendant is charged, and that the defendant aided or abetted that person in the commission of the offense.

As you can see, the first requirement is that you find that another person has committed the crime charged.  Obviously, no one can be convicted of aiding or abetting the criminal acts of another if no crime was committed by the other person in the first place.  But if you do find that a crime was committed, then you must consider whether the defendant aided or abetted the commission of that crime.

39

In order to aid or abet another to commit a crime, it is necessary that the defendant knowingly and wilfully associate himself in some way with the crime, and that he participate in the crime by doing some act to help make the crime succeed.

To do that, the defendant would have to have willfully and knowingly associated himself in some way with the crime, and willfully and knowingly sought by some act to help make it succeed.  Participation is willful if action is taken voluntarily and intentionally, and with the specific intent to do something which the law forbids or with the specific intent to fail to do something the law requires to be done; that is to say, with a bad purpose either to disobey or to disregard the law.

To establish that the defendant participated in the commission of the crime, the government must prove that defendant engaged in some affirmative conduct or overt act for the specific purpose of bringing about that crime.

The mere presence of a defendant where a crime is being committed, even coupled with knowledge by the defendant that a crime is being committed, or merely associating with others who were committing a crime is not sufficient to establish aiding and abetting.  An aider and abettor must have sought by some act to help the criminal conduct succeed.


Authority:       Sand, Form Instruction 11-2 (modified)

                 Adapted from the charge of the Hon. Carol B. Amon, United States v. Vytautas Vebeliunas, EDNY, 92-CR-1138 (CBA).

40

REQUEST NO. TWENTY-TWO

Conscious Avoidance: Deliberately Closing Eyes

In determining whether the defendant acted knowingly, you may consider whether the defendant deliberately closed his eyes to what would otherwise have been obvious to him.  If you find beyond a reasonable doubt that the defendant acted with (*or* that the defendant's ignorance was solely and entirely the result of) a conscious purpose to avoid learning the truth (*e.g.,* that the statement was false), then this element may be satisfied.  However, guilty knowledge may not be established by demonstrating that the defendant was merely negligent, foolish or mistaken.

If you find that the defendant was aware of a high probability that (*e.g.,* the statement was false) and that the defendant acted with deliberate disregard of the facts, you may find that the defendant acted knowingly.  However, if you find that the defendant actually believed that (*e.g.,* the statement was true), he may not be convicted.

It is entirely up to you whether you find that the defendant deliberately closed his eyes and any inferences to be drawn from the evidence on this issue.


Authority:     Sand, Form Instruction 3A-2

41

<u>REQUEST NO. TWENTY-THREE</u>

<u>Consciousness of Guilt from False Exculpatory Statement</u>

You have heard testimony that the defendant made certain statements outside the courtroom to law enforcement authorities in which the defendant claimed that his conduct was consistent with innocence and not with guilt.  The government claims that these statements in which he exonerated or exculpated himself are false.

If you find that the defendant gave a false statement in order to divert suspicion from himself, you may, but are not required to infer that the defendant believed that he was guilty. You may not, however, infer on the basis of this alone, that the defendant is, in fact, guilty of the crime for which he is charged.

Whether or not the evidence as to a defendant's statements shows that the defendant believed that he was guilty, and the significance, if any, to be attached to any such evidence, are matters for you, the jury, to decide.

<u>Authority</u>:      Sand, Form Instruction 6-11

42

<u>REQUEST NO. TWENTY-FOUR</u>

<u>Similar Acts: Intent, Knowledge, Absence of Mistake</u>

The government has offered evidence tending to show that on a different occasion the defendant engaged in conduct similar to the charges in the Indictment.

In that connection, let me remind you that the defendant is not on trial for committing this act not alleged in the Indictment.  Accordingly, you may not consider this evidence of the similar act as a substitute for proof that the defendant committed the crime charged.  Nor may you consider this evidence as proof that the defendant has a criminal personality or bad character. The evidence of the other, similar act was admitted for a much more limited purpose and you may consider it only for that limited purpose.

If you determine that the defendant committed the acts charged in the Indictment and the similar acts as well, then you may, but you need not draw an inference that in doing the acts charged in the Indictment, the defendant acted knowingly and intentionally and not because of some mistake, accident or other innocent reasons.

Evidence of similar acts may not be considered by you for any other purpose. Specifically, you may not use this evidence to conclude that because the defendant committed the other act he must also have committed the acts charged in the Indictment.

<u>Authority</u>:        Sand, Form Instruction 5-25

REQUEST NO. TWENTY-FIVE

Charts and Summaries

The charts and summaries were shown to you in order to make the other evidence more meaningful and to aid you in considering the evidence.  They are no better than the testimony or the documents upon which they are based, and are not themselves independent evidence.  Therefore, you are to give no greater consideration to these charts, schedules, or summaries than you would give to the evidence upon which they are based.

It is for you to decide whether the charts, schedules, or summaries correctly present the information contained in the testimony and exhibits on which they are based.  You are entitled to consider the charts and summaries if you find that they are of assistance to you in analyzing the evidence and understanding the evidence.

Authority:       Sand, Form Instruction 5-13

44

<u>Conclusion</u>

The government requests permission to supplement these requests as may be deemed

necessary.


Respectfully submitted,


JOHN C. CRUDEN                          JOHN A. DiCICCO
Acting Assistant Attorney General       Acting Assistant Attorney General
Environment and Natural Resources Division   Tax Division
United States Department of Justice      United States Department of Justice

        <u>/s/ James B. Nelson</u>                    <u>/s/ Mark Kotila</u>
By:    JAMES B. NELSON              By:    MARK KOTILA
       Trial Attorney                      Trial Attorney
       Environmental Crimes Section        Northern Criminal Enforcement Section
       United States Department of Justice  United States Department of Justice
       601 D Street NW, Room 2140           601 D Street NW, Room 7816
       Washington, DC 20004                 Washington, DC 20004
       (202) 305-0423 (t)                   (202) 514-3768 (t)
       (202) 305-0397 (f)                   (202) 616-1786 (f)
       James.Nelson@usdoj.gov               Mark.Kotila3@usdoj.gov

45

<u>CERTIFICATION OF SERVICE</u>

I hereby certify a copy of the foregoing Government's Request to Charge was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the court's CM/ECF System.

<u>/s/ James B. Nelson</u>
JAMES B. NELSON
Trial Attorney
Environmental Crimes Section
United States Department of Justice
601 D Street NW, Room 2140
Washington, DC 20004
(202) 305-0423 (t)
(202) 305-0397 (f)
James.Nelson@usdoj.gov