UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -                 03-CR-0723 (JFB)

DOV SHELLEF,

              Defendant.
- - - - - - - - - - - - - - - - X

<u>Jury charge</u>

Now that the evidence in this case has been presented, and the attorneys for the government and the defendant have concluded their closing arguments, it is my responsibility to instruct you as to the law that governs this case.  My instructions will be in three parts:

<u>First</u>:  I will instruct you regarding the general rules that define and govern the duties of a jury in a criminal case;

<u>Second</u>:  I will instruct you as to the legal elements of the crimes charged in the indictment - that is, the specific elements that the government must prove beyond a reasonable doubt to warrant a finding of guilt; and

<u>Third</u>:  I will give you some general rules regarding your deliberations.

**PART I:       GENERAL RULES**

1.   <u>The Duties of the Jury</u>

To begin with - it is your duty to find the facts from all of the evidence in this case.  You are the sole judges of the facts and it is, therefore, for you and you alone to pass upon the weight of the evidence, and to draw such inferences as you deem to be reasonable and warranted from the evidence or lack of evidence in this case.

With respect to any question concerning the facts, it is your recollection of the evidence that controls.

To the facts as you find them, you must apply the law in accordance with my instructions.  While the lawyers may have commented on some of these legal rules, you must be guided only by what I instruct you about them.  You must follow all the rules as I explain them to you.  You may not follow some and ignore others.

2.   <u>Parties are equal before the court</u>

The fact that this prosecution is brought in the name of the United States Government does not entitle the United States to any greater consideration than the defendant is entitled to.  By the same token, it is entitled to no less consideration.  The parties - the United States Government and the defendant - are equal before this court, and they are entitled to equal consideration.  Neither the government nor the defendant is entitled to any sympathy or favor.

3.  Presumption of Innocence and Burden of Proof

You must remember that the indictment in this case is only an accusation.  It is not evidence.  The defendant has pled not guilty to that indictment.

As a result of the defendant's plea of not guilty the burden is on the prosecution to prove guilt beyond a reasonable doubt. This burden never shifts to a defendant for the simple reason that the law never imposes upon a defendant in a criminal case the burden or duty of calling any witness or producing any evidence.

The law presumes the defendant to be innocent of all the charges against him. I therefore instruct you that the defendant is to be presumed by you to be innocent throughout your deliberations until such time, if ever, you as a jury are satisfied that the government has proven him guilty beyond a reasonable doubt.

The defendant begins the trial here with a clean slate. This presumption of innocence alone is sufficient to acquit a defendant unless you as jurors are unanimously convinced beyond a reasonable doubt of his guilt, after a careful and impartial consideration of all of the evidence in this case.  If the government fails to sustain its burden, you must find the defendant not guilty.

This presumption was with the defendant when the trial began and remains with him even now as I speak to you and will continue with the defendant into your deliberations unless and until you

4

are convinced that the government has proven his guilt beyond a
reasonable doubt.

4.   <u>Proof Beyond a Reasonable Doubt</u>

I have said that the government must prove the defendant guilty beyond a reasonable doubt.  The question naturally is what is a reasonable doubt?  The words almost define themselves.  It is a doubt based upon reason and common sense.  It is a doubt that a reasonable person has after carefully weighing all of the evidence.  It is a doubt which would cause a reasonable person to hesitate to act in a matter of importance in his or her personal life.  Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it in the most important of his own affairs.  A reasonable doubt is not a caprice or whim; it is not a speculation or suspicion.  It is not an excuse to avoid the performance of an unpleasant duty.  And it is not sympathy.

In a criminal case, the burden is at all times upon the government to prove guilt beyond a reasonable doubt.  The law does not require that the government prove guilt beyond all possible doubt; proof beyond a reasonable doubt is sufficient to convict.  This burden never shifts to the defendant, which means that it is always the government's burden to prove each of the elements of the crimes charged beyond a reasonable doubt.

If, after fair and impartial consideration of all of the evidence, you have a reasonable doubt, it is your duty to acquit the defendant.  On the other hand, if after fair and impartial consideration of all the evidence you are satisfied of the defendant's guilt beyond a reasonable doubt, you should vote to

6

convict.

5.   <u>The Evidence</u>

A.   I wish to instruct you now as to what is evidence and how you should consider it.

The evidence upon which you are to decide what the facts are comes in several forms:

(1) Sworn testimony of witnesses, both on direct and cross-examination;

(2) Exhibits that have been received in evidence by the court; and

(3) Facts to which the lawyers have agreed or stipulated.

B.   What is <u>not</u> evidence:

Certain things are not evidence and are to be disregarded by you in deciding what the facts are:

(1) The contents of the indictment are not evidence;

(2) Arguments or statements by lawyers are not evidence;

(3) Questions put to the witnesses are not evidence;

(4) Objections to the questions or to offered exhibits are not evidence.

In this regard, attorneys have a duty to their clients to object when they believe evidence should not be received.  You should not be influenced by the objection or by the court's ruling on it.  If the objection was sustained, ignore the question.  If the objection was overruled, treat the answer like any other answer.  If I told you to disregard certain testimony or sustained a lawyer's request to disregard or strike certain testimony, you are to disregard the testimony.

8

(5) What I say in these instructions is not evidence.

(6) If evidence has been received for a limited purpose, you must consider that evidence for that limited purpose only.

(7) Obviously, anything you may have seen or heard outside the courtroom is not evidence.

Your verdict must be based solely upon the evidence developed at trial or the lack of evidence.

It would be improper for you to consider, in reaching your decision as to whether the government sustained its burden of proof, any personal feelings you may have about the defendant's race, religion, national origin, ethnic background, sex, or age. All persons are entitled to the presumption of innocence and the government has the same burden of proof regardless of who the defendant is.

In addition, it would be equally improper for you to allow any feelings you might have about the nature of the crimes charged to interfere with your decision-making process.

To repeat, your verdict must be based exclusively upon the evidence or the lack of evidence in the case.

C.  Direct and circumstantial evidence

I told you that evidence comes in various forms such as the sworn testimony of witnesses, exhibits, and stipulations.

There are, in addition, different kinds of evidence - direct and circumstantial.

(1) Direct evidence is the communication of a fact by a witness who testifies to the knowledge of that fact as having

9

been obtained through one of the five senses.  So, for example, a witness who testifies to knowledge of a fact because he saw it, heard it, smelled it, tasted it, or touched it is giving evidence which is direct.  What remains is your responsibility to pass upon the credibility of that witness.

(2) Circumstantial evidence is evidence which tends to prove a fact in issue by proof of other facts from which the fact in issue may be inferred.

The word "infer" - or the expression "to draw an inference" - means to find that a fact exists from proof of another fact. For example, if a fact in issue is whether it is raining at the moment, neither of us can testify directly to that fact sitting as we are in this windowless courtroom.  Assume, however, that as we are sitting here, a person walks into the courtroom wearing a raincoat that is soaking wet and carrying an umbrella dripping water.  We may infer that it is raining outside.  In other words, the fact of rain is an inference that could be drawn from the wet raincoat and the dripping umbrella.  An inference is to be drawn only if it is logical and reasonable to do so.  In deciding whether to draw an inference, you must look at and consider all the facts in the light of reason, common sense, and experience. Whether a given inference is or is not to be drawn is entirely a matter for you, the jury, to decide.  Please bear in mind, however, that an inference is not to be drawn by guesswork or speculation.

I remind you once again that you may not convict the

10

defendant unless you are satisfied of his guilt beyond a reasonable doubt, whether based on direct evidence, circumstantial evidence, or the logical inferences to be drawn from such evidence.  Circumstantial evidence does not necessarily prove less than direct evidence, nor does it necessarily prove more.  You are to consider all the evidence in the case, direct and circumstantial, in determining what the facts are and in arriving at your verdict.

       D.   <u>Number of Witnesses and Uncontradicted Testimony</u>

The fact that one party called more witnesses and introduced more evidence than the other does not mean that you should necessarily find the facts in favor of the side offering the most witnesses.  By the same token, you do not have to accept the testimony of any witness who has not been contradicted or impeached, if you find the witness not to be credible.  You also have to decide which witnesses to believe and which facts are true.  To do this you must look at all the evidence, drawing upon your own common sense and personal experience. After examining all the evidence, you may decide that the party calling the most witnesses has not persuaded you because you do not believe its witnesses.

In a moment, I will discuss the criteria for evaluating credibility; for the moment, however, you should keep in mind that the burden of proof is always on the government and the defendant is not required to call any witnesses or offer any evidence, since he is presumed to be innocent.

6.          Rulings by the Court

My next instruction relates to the rulings and
statements that I made during the course of this trial.  I hereby
instruct you that nothing that I said during the course of the
trial, no question that I have asked, no ruling that I have made,
and no statement that I may make in this charge, should be
interpreted in any way whatsoever as a suggestion of what
decision I believe you should make.  You should understand that I
have no opinion as to the decision you should make in this case.

You will remember that at various times throughout the
trial, I have been called upon to make rulings on various
questions of law.  I have sustained objections and I have
overruled objections.  Please do not concern yourself with my
reasons for making the rulings that I made.  These are purely
legal matters and must not affect your deliberation on the
factual matters in this case.  Nor are you to draw any inferences
for or against a party because that party raised objections
during the course of the case.  It is the duty of the attorneys
on each side of the case to object when the other side offers
testimony or other evidence which the attorney believes is not
properly admissible.  You should not hold it against an attorney
– or the defendant  – either because the attorney has made
objections, or because some of those objections may have been
overruled by me.

12

When the Court has sustained an objection to a piece of evidence or a question addressed to a witness, you must disregard it entirely and may draw no inference from it or speculate as to what the witness would have said if he or she had been permitted to answer the question.  Similarly, if after a question was asked and an answer given, the answer was ordered stricken from the record, you must disregard both the answer and the question.

You are further instructed that with respect to every situation where testimony has been stricken, the reason for that ruling relates to a matter of law which is no concern of yours and not for your consideration.  Once stricken, such testimony must be disregarded and ignored.  The reasons for my striking such testimony should not be discussed among you, nor should you speculate or guess about the basis for my ruling.  By the same token, where I allowed testimony or exhibits to be received into evidence over the objection of counsel, this was not an indication that I have any opinion as to the weight or effect of such evidence.  That is for you to decide.

In reaching your verdict, you also are not to concern yourselves in any way with the conferences which sometimes took place at the side bar between the Court and counsel for the parties, nor are you to draw any inferences for or against any party because that party may have requested such a conference. You also must not draw any conclusion whatsoever from the fact

13

that from time to time I may have asked questions of witnesses. This was solely to elicit facts which may or may not be material to your determination.

Remember that, in making your determination as to the facts, you should rely upon your own recollection of the evidence.  What I said from time-to-time during the course of the trial, or what I say in the charge that I am now giving you, should not be taken in place of your own recollection of the evidence in this case.

7.   <u>Witness Credibility – General Instruction</u>

   You have had an opportunity to observe all of the witnesses. It is now your job to decide how believable each witness was in his or her testimony.  You are the sole judges of the credibility of each witness and of the importance of his or her testimony.

   It must be clear to you by now that you are being called upon to resolve various factual issues under the counts of the indictment, in the face of the very different pictures painted by the government and the defense which cannot be reconciled.  You will now have to decide where the truth lies, and an important part of that decision will involve making judgments about the testimony of the witnesses you have listened to and observed.  In making those judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence which may help you to decide the truth and the importance of each witness' testimony.

   Your decision whether or not to believe a witness may depend on how that witness impressed you.  Was the witness candid, frank and forthright? Or, did the witness seem as if he or she was hiding something, being evasive or suspect in some way? How did the way the witness testified on direct examination compare with how the witness testified on cross-examination? Was the witness consistent in his or her testimony or did he or she contradict himself or herself? Did the witness appear to know what he or she was talking

about and did the witness strike you as someone who was trying to report his or her knowledge accurately?

How much you choose to believe a witness may be influenced by the witness' bias.  Does the witness have a relationship with the government or the defendant which may affect how he or she testified?  Does the witness have some incentive, loyalty or motive that might cause him or her to shade the truth; or, does the witness have some bias, prejudice or hostility that may have caused the witness—consciously or not—to give you something other than a completely accurate account of the facts he or she testified to?

Even if the witness was impartial, you should consider whether the witness had an opportunity to observe the facts he or she testified about and you should also consider the witness' ability to express himself or herself.  Ask yourselves whether the witness' recollection of the facts stands up in light of all other evidence.

In other words, what you must try to do in deciding credibility is to size a person up in light of his or her demeanor, the explanations given, and in light of all the other evidence in the case, just as you would in any important matter where you are trying to decide if a person is truthful, straightforward and accurate in his or her recollection.  In deciding the question of credibility, remember that you should use your common sense, your good judgment, and your experience.

16

8.    <u>Interest in Outcome</u>

In evaluating credibility of the witnesses, you should take into account any evidence that the witness who testified may benefit in some way from the outcome of this case.  Such an interest in the outcome creates a motive to testify falsely and may sway the witness to testify in a way that advances his or her own interests.  Therefore, if you find that any witness whose testimony you are considering may have an interest in the outcome of this trial, then you should bear that factor in mind when evaluating the credibility of his or her testimony and accept it with great care.

This is not to suggest that every witness who has an interest in the outcome of a case will testify falsely.  It is for you to decide to what extent, if at all, the witness' interest has affected or colored his or her testimony.

17

9.   <u>Credibility – Prior Inconsistent Statements</u>

You have heard evidence that a witness made a statement on an earlier occasion which counsel argues is inconsistent with the witness' trial testimony.  Evidence of the prior inconsistent statement was placed before you for the limited purpose of helping you decide whether to believe the trial testimony of the witness who contradicted himself or herself.  If you find that the witness made an earlier statement that conflicts with this trial testimony, you may consider that fact in deciding how much of his or her trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency, and whether that explanation appealed to your common sense.

It is exclusively your duty, based upon all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so how much, if any, weight to be given to the inconsistent statement in determining whether to believe all or part or none of the witness' testimony.

18

10.   <u>Law Enforcement Witnesses</u>

You have heard testimony of law enforcement officers and government employees. The fact that a witness may be employed as a law enforcement officer does not mean that his testimony is necessarily deserving of more or less consideration or greater or lesser weight than that of an ordinary witness.

At the same time, it is quite legitimate for defense counsel to try to attack the credibility of a law enforcement witness on the grounds that his testimony may be colored by a personal or professional interest in the outcome of the case.

It is your decision, after reviewing all the evidence, whether to accept the testimony of the law enforcement witness and to give to that testimony whatever weight, if any, you find it deserves.

19

11.   <u>Accomplice Called by the Government</u>

You have heard a witness who testified that he was actually involved in planning and carrying out the crimes charged in the indictment.  There has been a great deal said about this so-called accomplice witness in the summations of counsel and whether or not you should believe him.

The government argues, as it is permitted to do, that it must take the witnesses as it finds them.  It argues that only people who themselves take part in criminal activity have the knowledge required to show criminal behavior by others.

For those very reasons, the law allows the use of accomplice testimony.  Indeed, it is the law in federal courts that the testimony of accomplices may be enough in itself for conviction, if the jury finds that the testimony establishes guilt beyond a reasonable doubt.

However, it is also the case that accomplice testimony is of such nature that it must be scrutinized with great care and viewed with particular caution when you decide how much of that testimony to believe.

You should ask yourselves whether the so-called accomplice would benefit more by lying, or by telling the truth.  Was his testimony made up in any way because he believed or hoped that he would somehow receive favorable treatment by testifying falsely? Or did he believe that his interest would be best served by testifying truthfully?  If you believe that the witness was motivated by hopes of personal gain, was the motivation one which would cause him to

20

lie, or was it one which would cause him to tell the truth?  Did this motivation color his testimony?

In sum, you should look at all of the evidence in deciding what credence and what weight, if any, you will want to give to the accomplice witness.

12.  <u>Witness Testifying Pursuant to Cooperation Agreement</u>

In this case, there has been testimony from a government witness who pled guilty after entering into an agreement with the government to testify.  There is evidence that the government agreed not to bring additional charges in exchange for the witness' agreement to plead guilty and testify at this trial against the defendant.  The government has also promised to bring the witness' cooperation to the attention of the sentencing court.

The government is permitted to enter into this kind of plea agreement.  You, in turn, may accept the testimony of such a witness and even convict the defendant on the basis of such testimony, if it convinces you of the defendant's guilt beyond a reasonable doubt.

However, you should bear in mind that a witness who has entered into such an agreement has an interest in this case different than any ordinary witness.  A witness who realizes that he may be able to obtain his own freedom, or receive a lighter sentence by giving testimony favorable to the government, has a motive to testify falsely.  Therefore, you must examine his testimony with caution and weigh it with great care.  If, after scrutinizing his testimony, you decide to accept it, you may give it whatever weight, if any, you find it deserves.

13.   <u>Government Witness – Not Proper to Consider Guilty Plea</u>

You have heard testimony from government witnesses who pled guilty to charges arising out of the same facts as this case. You are instructed that you are to draw no conclusions or inferences of any kind about the guilt of the defendant on trial from the fact that a prosecution witness pled guilty to similar charges.  Each witness' decision to plead guilty was a personal decision based upon the circumstances and evidence in his own case.  It may not be used by you in any way as evidence against or unfavorable to the defendant on trial here.

14.   <u>Defendant's Right Not to Testify</u>

The defendant did not testify in this case.  Under our Constitution, a defendant has no obligation to testify or to present any evidence, because it is the government's burden to prove the defendant guilty beyond a reasonable doubt.  That burden remains with the government throughout the entire trial and never shifts to a defendant.  A defendant is never required to prove that he or she is innocent.

You may not attach any significance to the fact that the defendant did not testify.  No adverse inference against him may be drawn by you because he did not take the witness stand.  You may not consider this against the defendant in any way in your deliberations in the jury room.

24

15.   <u>Dates Approximate</u>

In alleging dates, the indictment frequently charges "on or about," and "between" certain dates.  The proof need not establish with certainty the exact date of an alleged offense. The law only requires the evidence establish beyond a reasonable doubt that the dates alleged in the indictment and the date established by the testimony or exhibits are substantially similar.

16.  <u>Chain of Custody</u>

You have heard witnesses testify at the trial regarding the
chain of custody for certain documents, including issues relating
to the collection, organization and preservation of the
documents, and the procedures followed by particular agencies and
agents with regard to signing for the receipt of these documents.
I have admitted the documents into evidence, but the integrity of
the chain of custody, along with any weaknesses or gaps you may
perceive in the chain of custody, is something you may consider
in evaluating the weight, if any, to be given to this evidence.

17.  <u>Limiting Instruction Regarding 3M, Raychem, and Government</u>
<u>of Israel</u>

Let me repeat to you an instruction I gave to you during the trial with regard to alleged interactions by the defendant with 3M, Raychem, and the Government of Israel.

The defendant is not charged with committing any crime other than the offenses contained in the indictment.  The government has offered this evidence of other acts by the defendant.  These acts are not part of the charges in the indictment, which relate only to Elf Atochem and Allied Signal.  The government was permitted to offer this evidence for a limited purpose - that is, on the issues of motive, intent, and the absence of mistake or accident as to the crimes charged in the indictment.

In that connection, let me remind you that the defendant is not on trial for committing any of these acts not alleged in the indictment.  Accordingly, you may not consider this evidence regarding other acts by the defendant as a substitute for proof that the defendant committed the crimes charged in the indictment beyond a reasonable doubt.  Nor may you consider this evidence as proof that the defendant has a criminal personality or bad character.  The evidence is being admitted for a much more limited purpose of motive, intent, and the absence of mistake or accident.  You may consider it only for that limited purpose and no other purpose.

18.  <u>Limiting Instruction Regarding Tax Liability of</u>
<u>Manufacturers</u>

You have heard evidence during the trial about Allied Signal's and Elf Atochem's duties regarding the federal CFC excise tax.  As you heard during the trial, there are certain procedural requirements that must be met for the manufacturers to qualify for the export exemption to the excise tax.  These companies are not on trial in this case.  Evidence regarding any alleged negligence or failure by these companies to comply with the federal tax regulations relating to the CFC excise tax is not, by itself, a defense to the crimes charged against the defendant in this case.  The indictment alleges that the defendant agreed to interfere with the IRS's collection of the excise tax by conspiring to misrepresent to Allied Signal and Elf Atochem the CFC-113's destination, which in turn would lead them to refrain from paying the excise tax.  Whether or not Allied Signal or Elf Atochem failed to meet their duty in some respect has no bearing, in and of itself, on whether the defendant agreed to interfere with and to obstruct this lawful function of the IRS by misleading the manufacturers about the taxable status of the transactions.

Instead, you may only consider this evidence for the limited purpose of (1) evaluating the specific intent of the defendant to defraud these two companies or the IRS in obstructing or impeding

28

the collection of federal excise taxes; and (2) evaluating the
credibility of the witnesses from these companies.

19.   <u>Other Persons Not on Trial</u>

You have heard evidence about the involvement of certain other people in the transactions referred to in the indictment.  That these individuals are not on trial before you is not your concern. You should neither speculate as to the reason these people are not on trial before you nor allow their absence as parties to influence in any way your deliberations in this case.

20.  <u>Stipulations</u>

The attorney for the United States and the attorneys for the defendant have entered into stipulations concerning certain facts that are relevant to this case.

A stipulation of fact is simply an agreement among the parties that a certain fact is true.  You should regard such agreed facts as true.  However, what weight to give those facts is entirely up to you.  You are the sole judges of the facts and you decide what weight to give those facts.

21.   <u>Charts and Summaries</u>

During the course of trial, there were charts and summaries shown to you.  The charts and summaries were shown to you in order to make the other evidence more meaningful and to aid you in considering that evidence.  They are no better than the testimony or the documents upon which they are based, and are not themselves independent evidence.  Therefore, you are to give no greater consideration to these charts or summaries than you would give to the evidence upon which they are based.  As a result, if you have any questions regarding these charts or summaries you should turn to the actual evidence - in particular, the documentary records upon which the charts and summaries are based.

It is for you to decide whether the charts and summaries correctly present information contained in the testimony and in the exhibits on which they are based.  You are entitled to consider the charts and summaries if you find that they are of assistance to you in analyzing the evidence and understanding the evidence.

22.  <u>Transcripts of Tape Recording</u>

The defense has been permitted to hand out a typed document which it prepared containing the defense's interpretation of what appears on a tape recording which has been received as evidence. The transcript was given to you as an aid or guide to assist you in listening to the tape.  However, the transcript is not in and of itself evidence.  Therefore, when the tape was played I advised you to listen very carefully to the tape itself.  You alone should make your own interpretation of what appears on the tape based upon what you heard.  If you think you heard something differently than appeared on the transcript then what you heard is controlling.  Let me say again, you, the jury, are the sole judges of the facts.

# PART II:    LEGAL ELEMENTS OF CHARGED CRIMES

I will now turn to the second part of this charge - and I will, as I indicated at the outset, instruct you as to the legal elements of the crimes charged in the indictment.  That is to say, I will now instruct you as to the specific elements of the crimes charged, each of which the government must prove beyond a reasonable doubt to warrant a finding of guilt.

Summary of Indictment

In order to place my instructions in context, I will start by giving you a summary of the crimes charged.  They are stated in the indictment.  I will give you a copy of the indictment to refer to during your deliberations, but the indictment is not evidence, it is simply the instrument by which the charges are brought.  It is an accusation.  It may not be considered by you as any evidence of the guilt of the defendant.  I am permitting you to have the indictment solely as a reference during your deliberations.

After summarizing the charges, I will instruct you in detail as to the law for you to apply to each charge in the indictment. And finally, I will tell you some further rules with respect to your deliberations.

First, the summary of the indictment.  The indictment contains eighty-six counts, or separate charges or offenses.  They are numbered Counts One through Eighty-Six.  The indictment uses the word "count."  Counsel may have used that word in their statements. I will use it in my instruction to you today.  It is a technical

34

word used by lawyers.  The word "count" in a criminal indictment means charge or accusation.  A count in an indictment is in effect an accusation that a defendant has violated the law in a particular way.  The defendant has entered a plea of not guilty and, by reason of that plea, has denied the charges contained in each count of the indictment.

You must consider each count separately and return a verdict based only upon the evidence as it relates to that specific count. Whether you find the defendant not guilty or guilty as to one offense should not affect your verdict as to any other offense charged.

I will now summarize the charges in the indictment.  Count One alleges that the defendant DOV SHELLEF engaged in a conspiracy with WILLIAM RUBENSTEIN to defraud the United States through the obstruction of a lawful function of the government.  Count Two alleges that the defendant willfully filed a false corporate tax return for Poly Systems Inc. for the year 1999.  Counts Three to Forty-Five allege that the defendant participated in a scheme to defraud Allied Signal, Inc. and caused the use of interstate wire communications in furtherance of the alleged scheme.  Counts Forty-Six to Eighty-Six allege that the defendant engaged in financial transactions involving the proceeds of the alleged wire fraud scheme for the specific purposes I will outline for you later in the charge.  I have summarized the counts in the indictment simply to give you an overview of the charges.  In addition, in a moment, I will read certain portions of the indictment, but not all of it.

35

For example, in paragraphs 1 through 8, there is an Introduction Section for the whole indictment, which I will not read, but you will have a copy of the indictment in the jury room and you can refer to it.  In your deliberations as to each count you should refer to the exact text of the indictment.  I caution you once again that the indictment itself is not evidence and is entitled to no independent weight in your considerations.  It is simply a list of accusations. I will now explain to you the law that applies to each of the counts in the indictment.

## **Count One: Conspiracy to Defraud the United States**

<u>Count One:  The Indictment and the Statute</u>

Count One of the indictment charges that, from on or about July 1997 until on or about November 2000, in the Eastern District of New York and elsewhere, the defendant DOV SHELLEF, together with co-conspirator William Rubenstein and others, came to some type of agreement or understanding to defraud the United States by impeding, impairing, obstructing and defeating the lawful function of the Internal Revenue Service, in the ascertainment, computation, assessment, and collection of excise tax due on domestic sales of an ozone depleting chemical, namely CFC-113.  The allegations regarding this Count are set forth in paragraph 9 through 40 of the indictment, which I will not read here.

The relevant statute on this subject is 18 U.S.C. § 371.  It provides:

> If two or more persons conspire . . . to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each [is guilty of a crime].

With respect to the applicable tax laws, Section 4681 of Title 26 of the United States Code imposes a tax on sales of CFC-113 by manufacturers, producers, and importers of that chemical as of January 1, 1991.  This excise tax was to be imposed on the

manufacturer upon the first domestic sale or use of virgin CFC-113 manufactured in, or imported into, the United States.  However, under the applicable tax regulations, no excise tax was imposed on the manufacturer for the sale of CFC-113 to be exported out of the United States.  In addition, under the applicable tax regulations, recycled or reclaimed CFC-113 was also exempt from the excise tax.

Count One:  Conspiracy to Defraud the United States

In Count One of the indictment, the defendant is accused of having been a member of a conspiracy to defraud the United States government.  A conspiracy is a kind of criminal partnership--a combination or agreement of two or more persons to join together to accomplish some unlawful purpose.

Congress has deemed it appropriate to make conspiracy, standing alone, a separate crime even if the conspiracy is not successful.  This is because collective criminal activity poses a greater potential threat to the public's safety and welfare than individual conduct and increases both the likelihood of success of a particular criminal venture.

In this regard, the charge of conspiracy to defraud the government does not mean that one of the illegal objects must be to cause the government to suffer a loss of money or property as a consequence of the conspiracy.  It would also be a conspiracy to defraud if one of the objects was to obstruct, interfere, impair, impede or defeat the legitimate functioning of the government through fraudulent or dishonest means, as I will define these terms.

<u>Count One:  Elements of Conspiracy to Defraud the United States</u>

In order to satisfy its burden of proof as to Count One, the government must establish each of the following six essential elements beyond a reasonable doubt:

(1)  The defendant entered into an agreement with at least one person

(2)  to obstruct a lawful function of the government

(3)  by deceitful or dishonest means

(4)  that the defendant knowingly and willfully became a member of the conspiracy,

(5)  that one of the members of the conspiracy knowingly committed at least one of the overt acts charged in the indictment, and

(6)  that the overt act which you find to be committed was committed to further some objective of the conspiracy.

Count One:  Existence of Agreement

The first element which the government must prove beyond a
reasonable doubt to establish the offense of conspiracy is that
two or more persons entered the unlawful agreement charged in the
indictment.

In order for the government to satisfy this element, you
need not find that the alleged members of the conspiracy met
together and entered into any express or formal agreement.
Similarly, you need not find that the alleged conspirators
stated, in words or writing, what the scheme was, its object or
purpose, or every precise detail of the scheme or the means by
which its object or purpose was to be accomplished.  What the
government must prove is that there was a mutual understanding,
either spoken or unspoken, between two or more people to
cooperate with each other to accomplish an unlawful act.

You may, of course, find that the existence of an agreement
to disobey or disregard the law has been established by direct
proof.  However, since conspiracy is, by its very nature,
characterized by secrecy, you may also infer its existence from
the circumstances of this case and the conduct of the parties
involved.

In a very real sense, then, in the context of conspiracy
cases, actions often speak louder than words.  In this regard,
you may, in determining whether an agreement existed here,
consider the actions and statements of all of those you find to
be participants as proof that a common design existed on the part

41

of the persons charged to act together to accomplish an unlawful

purpose.

Count One: Agreement to Obstruct a Lawful Function of the
Government

The second element which the government must prove beyond a
reasonable doubt to establish the offense of conspiracy charged
in Count One is that the agreement was to obstruct a lawful
function of the government.

The indictment alleges that: the "defendant DOV SHELLEF and
WILLIAM RUBENSTEIN, together with others, did knowingly and
willfully conspire to defraud the United States by impeding,
impairing, obstructing and defeating the lawful government
functions of the United States Department of the Treasury,
Internal Revenue Service, in the ascertainment, computation,
assessment and collection of revenue, to wit, federal excise
taxes due on the domestic sales of virgin CFC-113 acquired from
Elf Atochem and Allied Signal."

I instruct you that the term "impeding, impairing,
obstructing and defeating a lawful function of the government"
has its ordinary meaning.  I also instruct you that the Internal
Revenue Service is an agency of the United States government.

43

Count One: Dishonest or Deceitful Means

The third element which the government must prove beyond a reasonable doubt to establish the offense of conspiracy charged in Count One is that the agreement was to obstruct a lawful function of the government by dishonest or deceitful means.

The indictment alleges:

"21. It was a part of the conspiracy that defendant DOV SHELLEF and WILLIAM RUBENSTEIN engaged in a scheme to evade payment of excise taxes on their sales of large quantities of CFC-113 in the domestic market by misrepresenting to their suppliers that the CFC-113 was for export only, by failing to notify their suppliers that they were re-selling CFC-113 for domestic use, and by creating false documentation to make it appear that their sales were tax-exempt transactions."

I instruct you that the term "dishonest or deceitful means" has its ordinary meaning.  Thus, only conduct that both is intended to impede the lawful functions of a government agency and is fraudulent or dishonest will support a charge of conspiracy to defraud a government agency.  A conspiracy to impede the functions of a government agency by fraudulent or dishonest means may include, by way of example only, such things as altering documents after they have been demanded by the government agency, creating false documents, making false statements, attempting to induce others to make false statements, or engaging in other fraudulent or deceptive conduct that would

44

have the effect of impairing the ability of the government agency to determine material aspects of a transaction.  By citing these examples, I do not suggest that these are the only actions that could impede the IRS by fraudulent or dishonest means, nor do I express any view as to whether conduct similar to these examples took place here.

It is critical that you recognize, however, that not all conduct that impedes the lawful functions of a government agency is illegal – to be unlawful, such conduct must entail fraud or dishonesty.  Again, by way of example only, the following conduct might impede the lawful functions of a government agency, but lacks the required fraud or dishonesty: an agreement between witnesses not to tell the government something unless specifically asked about it; advice from an attorney to a client to assert his constitutional right not to speak to governmental investigators; an agreement not to create a document that individuals had no obligation to create.  In each of these examples, the conduct at issue may well make it harder for the government to do its job, but the conduct is not fraudulent or dishonest.  Such conduct cannot support a charge of conspiracy to defraud the government.

It is not illegal simply to make the IRS's job harder. Conduct that impedes the lawful functions of the IRS, without more, does not support the charged conspiracy to defraud the IRS.

45

On the other hand, an agreement to engage in conduct that tends to impede the IRS, and involves fraudulent or dishonest means, does constitute an illegal agreement to defraud the United States.

It is not necessary that the government or the IRS actually suffers a financial loss from the scheme.  Nor is it required that the means involved constituted a crime in and of themselves. The means, must, however, be fraudulent or dishonest.

Count One:  Membership in the Conspiracy

The fourth element which the government must prove beyond a reasonable doubt to establish the offense of conspiracy charged in Count One is that the defendant knowingly, willfully and voluntarily became a member of the conspiracy.

If you are satisfied that the conspiracy charged in the indictment existed, you must next ask yourselves who the members of that conspiracy were.  In deciding whether the defendant was, in fact, a member of the conspiracy, you should consider whether the defendant knowingly and willfully joined the conspiracy.  Did he participate in it with knowledge of its unlawful purpose and with the specific intention of furthering its business or objective as an associate or worker?

In that regard, it has been said that in order for a defendant to be deemed a participant in a conspiracy, he must have had a stake in the venture or its outcome.  You are instructed that, while proof of a financial interest in the outcome of a scheme is not essential, if you find that the defendant had such an interest, that is a factor which you may properly consider in determining whether or not the defendant was a member of the conspiracy charged in the indictment.

As I mentioned a moment ago, before the defendant can be found to have been a conspirator, you must first find that he knowingly joined in the unlawful agreement or plan.  The key question, therefore, is whether the defendant joined the

47

conspiracy with an awareness of at least some of the basic aims
and purposes of the unlawful agreement.

It is important for you to note that the defendant's
participation in the conspiracy must be established by
independent evidence of his own acts or statements, as well as
those of the other alleged co-conspirators, and the reasonable
inferences which may be drawn from them.

The defendant's knowledge is a matter of inference from the
facts proved.  In that connection, I instruct you that to become
a member of the conspiracy, the defendant need not have known the
identities of each and every other member, nor need he have been
apprised of all of their activities.  Moreover, the defendant
need not have been fully informed as to all of the details, or
the scope, of the conspiracy in order to justify an inference of
knowledge on his part. Furthermore, the defendant need not have
joined in all of the conspiracy's unlawful objectives.

The extent of a defendant's participation has no bearing on
the issue of a defendant's guilt.  A conspirator's liability is
not measured by the extent or duration of his participation.
Indeed, each member may perform separate and distinct acts and
may perform them at different times. Some conspirators play major
roles, while others play minor parts in the scheme.  An equal
role is not what the law requires. In fact, even a single act may
be sufficient to draw the defendant within the ambit of the
conspiracy.

I want to caution you, however, that the defendant's mere

48

presence at the scene of the alleged crime does not, by itself, make him a member of the conspiracy.  Similarly, mere association with one or more members of the conspiracy does not automatically make the defendant a member.  A person may know, or be friendly with, a criminal, without being a criminal himself.  Mere similarity of conduct or the fact that they may have assembled together and discussed common aims and interests does not necessarily establish proof of the existence of a conspiracy.

I also want to caution you that mere knowledge or acquiescence, without participation, in the unlawful plan is not sufficient.  Moreover, the fact that the acts of a defendant, without knowledge, merely happen to further the purposes or objectives of the conspiracy, does not make the defendant a member.  More is required under the law.  What is necessary is that the defendant must have participated with knowledge of at least some of the purposes or objectives of the conspiracy and with the intention of aiding in the accomplishment of those unlawful ends.

In sum, the defendant, with an understanding of the unlawful character of the conspiracy, must have intentionally engaged, advised or assisted in it for the purpose of furthering the illegal undertaking.  He thereby becomes a knowing and willing participant in the unlawful agreement--that is to say, a conspirator.

Count One:   Commission of Overt Act

The fifth element which the government must prove beyond a reasonable doubt to establish the offense of conspiracy as alleged in Count One is that at least one of the overt acts charged in the indictment was knowingly committed by at least one of the conspirators, at or about the time and place alleged.

Count One of the indictment charges that the following overt acts were committed in the Eastern District of New York and elsewhere.

OVERT ACTS

July 14, 1997 Sale

a.   On or about July 14, 1997, defendant DOV SHELLEF caused a purchase order from the Hayward company for the purchase of 2,760 pounds of CFC-113 to be faxed from his office in Great Neck, New York to William Rubenstein, and requested that Rubenstein instruct the trucking company to collect the invoiced amount on behalf of Poly Systems and to deliver the payment check to Rubenstein.

b.   On or about July 14, 1997, on behalf of Poly Systems, William Rubenstein caused 2,760 pounds of virgin Elf Atochem CFC-113 to be shipped to the Hayward company from his warehouse facilities in Bayonne, New Jersey, via a commercial trucking company.

c.   On or about July 14, 1997, William Rubenstein caused Dunbar Sales to create an invoice to Poly

50

Systems falsely marked "FOR EXPORT ONLY" for the 2,760 pounds of virgin Elf Atochem CFC-113 shipped to the Hayward company that day.

August 29, 1997 Sale

d.  On or about August 27, 1997, defendant DOV SHELLEF caused a Polytuff purchase order to be sent from his office in Great Neck, New York to William Rubenstein for 2,760 pounds of CFC-113, falsely described as "Reclaimed", for shipment to a company located in Gainesville, Florida (the "Florida company").

e.  On or about August 29, 1997, William Rubenstein caused 2,760 pounds of virgin Elf Atochem CFC-113 to be delivered from his warehouse facility in Bayonne, New Jersey to a commercial trucking company for shipment to the Florida company.

f.  On or about August 29, 1997, William Rubenstein caused Dunbar Sales to create an invoice to Poly Systems falsely describing as "Reclaimed" and "FOR EXPORT ONLY" the 2,760 pounds of virgin Elf Atochem CFC-113 shipped to the Florida company that day.

September 5, 1997 Sale

g.  On or about September 5, 1997, defendant DOV SHELLEF caused a Poly Systems purchase order to be sent

51

from his office in Great Neck, New York to William Rubenstein for 3,450 pounds of CFC-113, falsely described as "Reclaimed", for shipment to a domestic company located in Oakland, California (the "Oakland company").

h. On or about September 5, 1997, William Rubenstein caused 3,450 pounds of virgin Elf Atochem CFC-113 to be shipped to the Oakland company from his warehouse facilities in Bayonne, New Jersey, via a commercial trucking company.

i. On or about September 5, 1997, William Rubenstein caused a Dunbar Sales invoice to Poly Systems to be created falsely describing as "Reclaimed" and "FOR EXPORT ONLY" the 2,760 pounds of virgin Elf Atochem CFC-113 shipped to the Oakland company that day.

September 9, 1998 Sale

j. On or about September 8, 1998, defendant DOV SHELLEF caused a Poly Systems purchase order to be faxed from his office in Great Neck, New York to William Rubenstein for 10,350 pounds of CFC-113 falsely described as "RECLAIMED" for shipment to a company located in Middlesex, New Jersey (the "Middlesex company").

k. On or about September 9, 1998, William

Rubenstein caused 10,350 pounds of virgin Elf Atochem CFC-113 to be shipped to the Middlesex company from his warehouse facilities in Bayonne, New Jersey, via a commercial trucking company.

l.  On or about September 9, 1998, William Rubenstein caused a Dunbar Sales invoice to Poly Systems to be created, falsely identifying as "RECLAIMED" and "FOR EXPORT ONLY" the 10,350 pounds of virgin Elf Atochem CFC-113 shipped to the Middlesex company that day.

December 7, 1998 Sale

m.  On or about December 5, 1998, defendant DOV SHELLEF caused to be faxed from his office in Great Neck, New York to William Rubenstein and one of Rubenstein's employees instructions to remove all reference to Allied Signal from 12 drums of CFC-113 and to ship them to the Hayward company.

n.  On or about December 7, 1998, William Rubenstein caused 12 drums of Allied Signal CFC-113 to be shipped to the Hayward company from his warehouse facility in Bayonne, New Jersey, as instructed by defendant DOV SHELLEF.

o.  On or about December 7, 1998, William Rubenstein caused an invoice to be sent to defendant DOV SHELLEF for cleaning the 12 drums of Allied Signal

53

CFC-113 shipped to the Hayward company on December 7, 1998.

### May 7, 1999 Sale

p.  On or about May 7, 1999, defendant DOV SHELLEF instructed Five Star to ship 4 drums of Allied Signal CFC-113 to the Hayward company and to fax a copy of the bill of lading signed by the customer.

q.  On or about May 7, 1999, defendant DOV SHELLEF sent an invoice from his office in Great Neck, New York to the Hayward company for 4 drums of CFC-113 with special instructions to remit payment by wire transfer to an account at HSBC bank.

### August 26, 1999 Sale

r.  On or about August 25, 1999, defendant DOV SHELLEF instructed Five Star to ship four drums of Allied Signal CFC-113 to the Hayward company and to fax a copy of the bill of lading signed by the customer.

s.  On or about August 26, 1999, defendant DOV SHELLEF sent an invoice from his office in Great Neck, New York to the Hayward company for four drums of CFC-113 with special instructions to remit payment by wire transfer to an account at Commercial Bank of New York.

### February 7, 2000 Shipments

54

     t.  On or about February 7, 2000, William
Rubenstein caused to be shipped 60 drums of Allied
Signal CFC-113 to Five Star from his warehouse facility
in Bayonne, New Jersey, as instructed by defendant DOV
SHELLEF.

     u.  On or about February 7, 2000, William
Rubenstein caused an invoice to be sent to defendant
DOV SHELLEF for cleaning the 60 drums of Allied Signal
CFC-113 shipped to Five Star on February 7, 2000.


In order for the government to satisfy this element, it is
not required that all of the overt acts alleged in the indictment
be proven.  Proof beyond a reasonable doubt of one overt act is
sufficient.  However, in order to return a guilty verdict, you
must be unanimous as to which of the overt acts was committed.
In other words, all twelve of you must agree that the same overt
act has been proven.

Also, you need not find that the defendant in this case
committed the overt act.  It is sufficient for the government to
show that one of the conspirators knowingly committed an overt
act in furtherance of the conspiracy, since such an act becomes,
in the eyes of the law, the act of all of the members of the
conspiracy.

You are further instructed that the overt act need not have
been committed at precisely the time alleged in the indictment.
It is sufficient if you are convinced beyond a reasonable doubt,

that it occurred at or about the time and place stated.

<u>Count One:  Commission of Overt Act in Furtherance of the</u>
<u>Conspiracy</u>

The sixth and final element which the government must prove beyond a reasonable doubt to establish the offense of conspiracy as alleged in Count One of the indictment is that the overt act was committed for the purpose of carrying out the unlawful agreement.

In order for the government to satisfy this element, it must prove, beyond a reasonable doubt, that at least one overt act was knowingly and willfully done, by at least one conspirator, in furtherance of some object or purpose of the conspiracy, as charged in the indictment.  In this regard, you should bear in mind that the overt act, standing alone, may be an innocent, lawful act. Frequently, however, an apparently innocent act sheds its harmless character if it is a step in carrying out, promoting, aiding or assisting the conspiratorial scheme.  You are therefore instructed that the overt act does not have to be an act which, in and of itself is criminal or constitutes an objective of the conspiracy.

Count One:  Acts and Declarations of Co-Conspirators

You will recall that I have admitted into evidence against the defendants the acts and statements of others because these acts and statements were committed by persons who, the government charges, were also confederates or co-conspirators of the defendants on trial.

The reason for allowing this evidence to be received against the defendants has to do with the nature of the crime of conspiracy.  A conspiracy is often referred to as a partnership in crime.  Thus, as in other types of partnerships, when people enter into a conspiracy to accomplish an unlawful end, each and every member becomes an agent for the other conspirators in carrying out the conspiracy.

Accordingly, the reasonably foreseeable acts, declarations, statements and omissions of any member of the conspiracy and in furtherance of the common purpose of the conspiracy, are deemed, under the law, to be the acts of all of the members, and all of the members are responsible for such acts, declarations, statements and omissions.

If you find, beyond a reasonable doubt, that the defendant whose guilt you are considering was a member of the conspiracy charged in the indictment, then, any acts done or statements made in furtherance of the conspiracy by persons also found by you to have been members of that conspiracy, may be considered against that defendant.  This is so even if such acts were done and statements were made in the defendant's absence and without his

knowledge.

However, before you may consider the statements or acts of a co-conspirator in deciding the issue of a defendant's guilt, you must first determine that the acts and statements were made during the existence, and in furtherance, of the unlawful scheme. If the acts were done or the statements made by someone whom you do not find to have been a member of the conspiracy or if they were not done or said in furtherance of the conspiracy, they may be considered by you as evidence only against the member who did or said them.

<u>Count One:  Use of Third Parties</u>

A conspiracy to defraud the United States may be effected through the use of third parties.  The broad language of 18 U.S.C. § 371 covering conspiracies to defraud "in any manner for any purpose" puts no limits on the method used to defraud the United States.  A method that makes use of innocent individuals or businesses to reach and defraud the United States is not for that reason beyond the scope of 18 U.S.C. § 371.

<u>Count One:  Non-Taxable Sales of Reclaimed CFC-113</u>

The defendant contends that he did not believe that sales of certain of the CFC-113 acquired from Elf Atochem were subject to excise tax because he believed the product to be "reclaimed." The Elf Atochem material originally purchased by Mr. Rubenstein's companies was a mixture of material that included CFC-113.

Section 4682(d)(1) of Title 26 of the United States Code provides that "no [federal excise] tax shall be imposed [] on any ozone-depleting chemical which is diverted or recovered in the United States as part of a recycling process (and not as part of the original manufacturing or production process)."  The Tax Code does not define the phrase "a recycling process."  The word reclaimed is also not defined in the Tax Code.

<u>Count One:  Conspiracy</u>

The defendant can be convicted of violating 18 U.S.C. § 371, conspiracy to defraud the United States of excise tax due on domestic sales of CFC-113, despite the fact that he did not have a legal obligation to pay the excise tax in the first instance. However, the government must prove beyond a reasonable doubt, by satisfying all of the elements I have described, that the defendant conspired to engage in some conduct to cause the parties, Allied Signal and Elf Atochem, not to pay the tax.  Mere inaction on the part of the defendant is not sufficient.

Count One:  Impossibility of Success

    It is not a defense to a conspiracy charge that the object of the conspiracy could not be achieved because of circumstances that the conspirators did not know about.  Thus, you may find the defendant guilty of conspiracy even though it was impossible for the defendant to carry out his plan successfully.

Count One:  Good Faith Belief

I have previously instructed you that a defendant can be found guilty of participating in a conspiracy to defraud the United States only if the government proves beyond a reasonable doubt that the defendant acted willfully.  As I have instructed you, willfulness means that the defendant acted with knowledge that he was violating the law, and with the specific intent to violate that law.

A defendant does not act willfully if he believes in good faith that his actions comply with the law.  If the defendant believed that he was not doing anything to defraud the United States with respect to the assessment and collection of excise taxes on the sale of CRC-113, then he cannot be said to have had a criminal intent to violate the tax laws.  If a defendant honestly believes that he is not violating the law, then he is not a willful member of a criminal conspiracy, even if the defendant's belief was incorrect, or even unreasonable or irrational.

The government has the burden of proving beyond a reasonable doubt that a defendant acted willfully, that is, that the defendant did not have a good faith belief in the lawfulness of his conduct.

This instruction not only applies to Count One but to all counts in the indictment.

64

Count One: Multiple Conspiracies

Whether there existed a single unlawful agreement, or many such agreements, or indeed, no agreement at all, is a question of fact for you, the jury, to determine in accordance with the instructions I am about to give you.

When two or more people join together to further one common unlawful design or purpose, a single conspiracy exists. By way of contrast, multiple conspiracies exist when there are separate unlawful agreements to achieve distinct purposes.

Proof of several separate and independent conspiracies is not proof of the single, overall conspiracy charged in the indictment, unless one of the conspiracies proved happens to be the single conspiracy described in the indictment.

You may find that there was a single conspiracy despite the fact that there were changes in either personnel( by the termination, withdrawal, additions of new members), or activities, or both, so long as you find that some of the co-conspirators continued to act for the entire duration of the conspiracy for the purpose(s) charged in the indictment. The fact that the members of a conspiracy are not always identical does not necessarily imply that separate conspiracies exist.

On the other hand, if you find that the conspiracy charged in the indictment did not exist, you cannot find the defendant guilty of the single conspiracy charged in the indictment. This

is so even if you find that some conspiracy other than the one charged in this indictment existed, even though the purposes of both conspiracies may have been the same and even though there may have been some overlap in membership.

Similarly, if you find that the defendant was a member of another conspiracy, and not the one charged in the indictment, then you must acquit the defendant of the conspiracy charge.

Therefore, what you must do is determine whether the conspiracy charged in the indictment existed. If it did, you then must determine the nature of the conspiracy and who were its members.

<u>Count Two: Filing a False Tax Return</u>
<u>The Indictment and the Statute</u>

The indictment charges the defendant with filing a false or fraudulent tax return.  The indictment reads as follows:

<u>Count Two</u>
(False Tax Return)

>       41.  The allegations contained in paragraphs 1 through 8 and 10 through 40 are realleged and incorporated as if fully set forth in this paragraph.
>
>       42.  On or about September 18, 1999, within the Eastern District of New York and elsewhere, defendant DOV SHELLEF did knowingly and willfully make and subscribe to a United States Form 1120 Corporate Income Tax Return for Poly Systems, Inc., for the calendar year ending December 1999, which was verified by a written declaration that it was made under the penalties of perjury, and which was filed with the Internal Revenue Service Center in Holtsville, New York, which defendant DOV SHELLEF then and there knew and believed was not true and correct as to every material matter, namely, said return falsely reported gross receipts of $986,224.01 and omitted substantial gross receipts.

The indictment alleges that the defendant violated section 7206(1) of Title 26 of the United States Code which provides that:

>       Any person who willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter [shall be guilty of a crime].

67

Count Two:  Filing a False Tax Return
Statutory Purpose

The system of tax collection in the United States relies upon the honesty of taxpayers.  The government needs taxpayers to report timely, completely, and honestly all taxes they owe so that it can collect the taxes due.  Congress, therefore, has made it a criminal offense for a taxpayer to evade taxes, to file a false return, or to file no return, under certain circumstances.

<u>Count Two:  Filing a False Tax Return</u>
<u>Elements of the Offense</u>

In order to prove the defendant guilty of filing a false or fraudulent tax return, the government must prove each of the following elements beyond a reasonable doubt:

First, that the defendant subscribed and filed, or caused to be made and filed, a tax return.

Second, that the return contained a written declaration that it was made under penalty of perjury.

Third, that the defendant did not believe the return to be true and correct as to every material matter.

Fourth, that the defendant acted willfully.

<u>Count Two:  Filing a False Tax Return</u>
<u>First Element–Defendant Filed a Return</u>

The first element that the government must prove beyond a reasonable doubt is that the defendant subscribed and filed, or caused to be made and filed, a tax return.

A tax return is subscribed to at the time it is signed.  A tax return is filed at the time it is delivered to the Internal Revenue Service.

70

<u>Count Two:  Filing a False Tax Return</u>
<u>Second Element–Return Was Filed Under Penalty of Perjury</u>

The second element that the government must prove beyond a reasonable doubt is that the return contained a written declaration that it was made under penalty of perjury.

To satisfy this element, the government must prove that on its face the return contained a statement indicating that the return was made under penalty of perjury.

<u>Count Two:  Filing a False Tax Return</u>
<u>Third Element-Return Was Filed Materially and Knowingly False</u>

The third element that the government must prove beyond a reasonable doubt is that the defendant did not believe the return to be true and correct as to every material matter.  To prove this element, the government must prove that the return was materially false and that the defendant knew that this was so.

An income tax return may be false not only by reason of understatement of income, but also because of an overstatement of lawful deductions or because deductible expenses are mischaracterized on the return.

The false statement in the return must be material.  This means that it must be essential to an accurate determination of defendant's tax liability.

The government must also prove that the defendant knew that the statement was false.  A person acts knowingly when he acts intentionally and voluntarily, and not because of ignorance, mistake, accident or carelessness.  Whether the defendant acted knowingly may be proven by the defendant's conduct and by all of the facts and circumstances surrounding the case.

<u>Count Two:  Filing a False Tax Return</u>
<u>Fourth Element-Willfullness</u>

The fourth element that the government must prove beyond a reasonable doubt is that the defendant acted willfully.

In order for the government to prove this element, it must establish beyond a reasonable doubt that the defendant acted voluntarily and intentionally, with the specific intent to make a statement that the defendant knew was false, when it was the legal duty of the defendant to answer truthfully, and the defendant knew it was his legal duty to answer truthfully.

Count Two: Filing of Amended Corporate Tax Return

Count Two charges the defendant with filing a false corporate tax for Poly Systems, Inc. for the 1999 year.  There was also evidence that the defendant filed an amended corporate tax return for that corporation for that year.

Without more, the fact that the defendant filed an amended corporate tax return cannot provide an inference that the defendant acted willfully in filing the original return.  The filing of an amended tax return can only support an inference of mistake, not intentional misconduct.

The tax laws permit the filing of amended returns to correct errors and there should be no discouragement to the filing of an amended return, and no hazard in doing so.  The correction of errors by the filing of an amended return is relevant in showing lack of willfulness.

74

<u>Count Two: Reliance on an Accountant</u>

Evidence has been presented that the defendant engaged accountants to prepare the tax returns in question.

Reliance upon an accountant is a valid defense to a charge of filing a false tax return since this charge has the essential element of willfulness.

If you find that the defendant hired an accountant whom he considered competent to prepare the returns and made a full and accurate report to that accountant of all the material facts available to him, and did not have any reasonable basis to believe that the returns were prepared incorrectly, then you must find the defendant not guilty.

Since the defense of reliance goes to the essential element of willfulness, and willfulness is an essential element of the crime charged, the government has the burden of disproving any such reliance beyond a reasonable doubt.

<u>Counts Three to Forty-five</u>
<u>Wire Fraud:  The Indictment and the Statute</u>

The indictment charges that the defendant devised a scheme to defraud (*e.g.*, by means of false representations) and in furtherance of that scheme knowingly caused the interstate wires to be used.  Specifically, the indictment charges that, in or about and between September 1998 and November 2000, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, defendant DOV SHELLEF knowingly and intentionally devised a scheme and artifice to defraud Allied Signal and to obtain money and property from Allied Signal by means of materially false and fraudulent pretenses, representations and promises.  That is, it is alleged that the defendant misrepresented the destination of the CFC-113 to induce Allied Signal to sell the product without paying the excise tax to the Internal Revenue Service or including the tax in the price it charged.

The indictment reads in relevant part:

> 43.  The allegations contained in paragraphs 1 through 8 and 10 through 40 are realleged and incorporated as if fully set forth in this paragraph.* * *
>
> 50.  For the purpose of executing this scheme and artifice, and attempting to do so, on or about the dates set forth below, defendant DOV SHELLEF and William Rubenstein did knowingly and intentionally transmit and cause to be transmitted by means of wire communication in interstate commerce the following writings, signs, signals, pictures and sounds:

| Count | Date | Origin | Destination | Description |
|---|---|---|---|---|
| 3 | 11/30/98 | HSBC, Great Neck, NY | Corestates Bank Philadelphia, PA | Wire Transfer |
| 4 | 12/5/98 | Poly Systems, Great Neck, NY | Dunbar Sales, Bayonne, NJ | Shipping Instructions |
| 5 | 1/20/99 | HSBC, Great Neck, NY | Corestates Bank Philadelphia, PA | Wire Transfer |
| 6 | 1/26/99 | Poly Systems, Great Neck, NY | Dunbar Sales, Bayonne, NJ | Shipping Instructions |
| 7 | 3/11/99 | HSBC, Great Neck, NY | Corestates Bank Philadelphia, PA | Wire Transfer |
| 8 | 3/15/99 | Poly Systems, Great Neck, NY | Dunbar Sales, Bayonne, NJ | Shipping Instructions |
| 9 | 4/27/99 | HSBC, Great Neck, NY | Corestates Bank Philadelphia, PA | Wire Transfer |
| 10 | 6/14/99 | HSBC, Great Neck, NY | Corestates Bank Philadelphia, PA | Wire Transfer |
| 11 | 8/26/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 12 | 8/30/99 | Poly Systems, Great Neck, NY | Dunbar Sales, Bayonne, NJ | Shipping Instructions |
| 13 | 8/31/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 14 | 9/14/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 15 | 9/15/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |

| Count | Date | Origin | Destination | Description |
|---|---|---|---|---|
| 16 | 9/16/99 | Five Star, San Leandro, CA | Poly System, Great Neck, NY | Bill of Lading |
| 17 | 9/21/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 18 | 9/24/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 19 | 9/30/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 20 | 10/04/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 21 | 10/12/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 22 | 10/14/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 23 | 10/18/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 24 | 10/19/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 25 | 10/22/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 26 | 10/27/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 27 | 10/29/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |

| Count | Date | Origin | Destination | Description |
|-------|------|--------|-------------|-------------|
| 28 | 11/02/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 29 | 11/05/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 30 | 11/12/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 31 | 11/18/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 32 | 11/22/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 33 | 11/23/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 34 | 11/29/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 35 | 12/02/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 36 | 12/07/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 37 | 12/13/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 38 | 12/16/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 39 | 12/20/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |

| Count | Date | Origin | Destination | Description |
|---|---|---|---|---|
| 40 | 12/28/99 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 41 | 1/20/00 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 42 | 1/25/00 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 43 | 2/01/00 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 44 | 2/09/00 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |
| 45 | 2/11/00 | Bay Bank of Commerce, Hayward, CA | Commercial Bank of NY, Great Neck, NY | Wire Transfer |

The relevant statute on this subject is section 1343 of Title 18 of the United States Code.  It provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire radio or television communication in interstate or foreign commerce, any writings, signs, signals, pictures or sounds for the purpose of executing such scheme or artifice shall be [guilty of a crime].

<u>Counts Three to Forty-five</u>
<u>Wire Fraud:  Elements</u>

In order to sustain this charge, the government must prove each of the following elements beyond a reasonable doubt:

First, that there was a scheme or artifice to defraud or to obtain money or property by materially false and fraudulent pretenses, representations or promises, as alleged in the indictment;

Second, that the defendant knowingly and willfully participated in the scheme or artifice to defraud, with knowledge of its fraudulent nature and with specific intent to defraud or that he knowingly and intentionally aided and abetted others in the scheme; and

Third, that in execution of that scheme, the defendant used or caused the use of the interstate wires as specified in the indictment.

81

<u>Counts Three to Forty-five</u>
<u>Wire Fraud:  Existence of a Scheme or Artifice to Defraud</u>

The first element that the government must prove beyond a reasonable doubt is that there was a scheme or artifice to defraud the alleged victim – in this case, Allied Signal – of money or property by means of false or fraudulent pretenses, representations or promises.

A "scheme or artifice" is merely a plan for the accomplishment of an object.

A scheme to defraud is any plan, device, or course of action to obtain money or property by means of false or fraudulent pretenses, representations or promises reasonably calculated to deceive persons of average prudence.

"Fraud" is a general term which embraces all the various means by which human ingenuity can devise and which are resorted to by an individual to gain an advantage over another by false representations, suggestions or suppression of the truth, or deliberate disregard for the truth.

Thus, a "scheme to defraud" is merely a plan to deprive another of money or property by trick, deceit, deception or swindle.

The scheme to defraud is alleged to have been carried out by making false (or fraudulent) statements (representations) (claims) (documents).

82

A statement, representation, claim or document is false if it is untrue when made and was then known to be untrue by the person making it or causing it to be made.

A representation or statement is fraudulent if it was falsely made with the intention to deceive.

Deceitful statements of half truths, and the expression of an opinion not honestly entertained may also constitute false or fraudulent statements under the statute.

The deception need not be premised upon spoken or written words alone. The arrangement of the words, or the circumstances in which they are used may convey the false and deceptive appearance. If there is deception, the manner in which it is accomplished is immaterial.

The false or fraudulent representation must relate to a material fact or matter.  A material fact is one which would reasonably be expected to be of concern to a reasonable and prudent person in relying upon the representation or statement in making a decision (e.g., with respect to a proposed investment).

This means that if you find a particular statement of fact to have been false, you must determine whether that statement was one that a reasonable person or investor might have considered important in making his or her decision.  The same principle applies to fraudulent half truths.

The representations which the government charges were made as part of the scheme to defraud are set forth in paragraphs 43-

50 of the indictment, of which I have already read relevant parts to you.  It is not required that every misrepresentation charged in the indictment be proved.  It is sufficient if the prosecution proves beyond a reasonable doubt that one or more of the alleged material misrepresentations were made in furtherance of the alleged scheme to defraud.

In addition to proving that a statement was false or fraudulent and related to a material fact, in order to establish a scheme to defraud, the government must prove that the alleged scheme contemplated depriving another of money or property.

However, the government is not required to prove that the defendant himself originated the scheme to defraud.  Furthermore, it is not necessary that the government prove that the defendant actually realized any gain from the scheme or that the intended victim actually suffered any loss.

A scheme to defraud need not be shown by direct evidence, but may be established by all of the circumstances and facts in the case.

If you find that the government has sustained its burden of proof that a scheme to defraud, as charged, did exist, you next should consider the second element.

Counts Three to Forty-five
Wire Fraud:  Participation in Scheme with Intent

The second element that the government must prove beyond a
reasonable doubt is that the defendant participated in the scheme
to defraud knowingly, willfully and with specific intent to
defraud.

"Knowingly" means to act voluntarily and deliberately,
rather than mistakenly or inadvertently.

"Willfully" means to act knowingly and purposely, with an
intent to do something the law forbids; that is to say, with bad
purpose either to disobey or to disregard the law.

"Intent to defraud" means to act knowingly and with the
specific intent to deceive, for the purpose of causing some
financial or property loss to another.

The question of whether a person acted knowingly, willfully
and with intent to defraud is a question of fact for you to
determine, like any other fact question.  This question involves
one's state of mind.

Direct proof of knowledge and fraudulent intent is almost
never available.  It would be a rare case where it could be shown
that a person wrote or stated that as of a given time in the past
he committed an act with fraudulent intent.  Such direct proof is
not required.

The ultimate facts of knowledge and criminal intent, though
subjective, may be established by circumstantial evidence, based

85

upon a person's outward manifestations, his words, his conduct, his acts and all the surrounding circumstances disclosed by the evidence and the rational or logical inferences that may be drawn from them.

Circumstantial evidence, if believed, is of no less value than direct evidence.  In either case, the essential elements of the crime must be established beyond a reasonable doubt.

Since an essential element of the crime charged is intent to defraud, it follows that good faith on the part of the defendant is a complete defense to a charge of wire fraud.  A defendant, however, has no burden to establish a defense of good faith.  The burden is on the government to prove fraudulent intent and the consequent lack of good faith beyond a reasonable doubt.

Under the wire fraud statute, even false representations or statements do not amount to a fraud unless done with fraudulent intent. However misleading or deceptive a plan may be, it is not fraudulent if it was devised or carried out in good faith.  An honest belief in the truth of the representations made by a defendant is a good defense, however inaccurate the statements may turn out to be.

As a practical matter, then, in order to sustain the charges against the defendant, the government must establish beyond a reasonable doubt that he knew that his conduct as a participant in the scheme was calculated to deceive and, nonetheless, he associated himself with the alleged fraudulent scheme for the

purpose of causing some loss to another.

To conclude on this element, if you find that the defendant was not a knowing participant in the scheme or that he lacked the specific intent to defraud, you should acquit him.  On the other hand, if you find that the government has established beyond a reasonable doubt not only the first element, namely the existence of the scheme to defraud, but also this second element, that the defendant was a knowing participant and acted with specific intent to defraud, and if the government also establishes the third element, as to which I am about to instruct you, then you have a sufficient basis upon which to convict the defendant.

<u>Counts Three to Forty-Five</u>
<u>Wire Fraud:  Use of the Wires</u>

     The third and final element that the government must establish beyond a reasonable doubt is the use of an interstate or international wire communication in furtherance of the scheme to defraud.

     The wire communication must pass between two or more states as, for example, a telephone call between New York and New Jersey; or it must pass between the United States and a foreign country, such as a telephone call between New York and London.  A wire communication also includes a wire transfer of funds between banks in different states or between a bank in the United States and a bank in a foreign country and the transmission of a document by fax between two different states.

     The use of the wires need not itself be a fraudulent representation.  It must, however, further or assist in the carrying out of the scheme to defraud.

     It is not necessary for the defendant to be directly or personally involved in the wire communication, as long as the communication was reasonably foreseeable in the execution of the alleged scheme to defraud in which the defendant is accused of participating.

     In this regard, it is sufficient to establish this element of the crime if the evidence justifies a finding that the defendant caused the wires to be used by others.  This does not

88

mean that the defendant must specifically have authorized others to make the call, or transfer the funds, or send a fax.  When one does an act with knowledge that the use of the wires will follow in the ordinary course of business or where such use of the wires can reasonably be foreseen, even though not actually intended, then he causes the wires to be used.  The government contends that it was reasonably foreseeable that the wires would be used in the ordinary course of business (e.g., to transfer funds between banks, or to send faxes), and therefore that the defendant caused the use of the wires.

With respect to the use of the wires, the government must establish beyond a reasonable doubt the particular use charged in the indictment.  However, the government does not have to prove that the wires were used on the exact date charged in the indictment.  It is sufficient if the evidence establishes beyond a reasonable doubt that the wires were used on a date substantially similar to the dates charged in the indictment.

Counts Three to Forty-Five:
Breach of Contract Not Necessarily Fraud

Counts Three to Forty-Five refer to certain provisions of the contract between Allied Signal and Poly Systems.  A breach of contract does not amount to wire fraud.

By giving this instruction, I do not suggest that there was a failure to comply with any contractual obligation.  There is a dispute in this case as to whether or not there was any breach of the contract.  However, I instruct you that even if you believe that there was a breach of contract, you cannot infer from that fact alone that there was a scheme to defraud, as I have defined it.  Breach of contract and fraud are legally distinct and a breach of contract by itself does not violate the wire fraud statute.

<u>Counts Forty-Six to Fifty:  Money Laundering</u>
<u>The Indictment and the Statute</u>

On Counts Forty-Six to Fifty, the defendant is charged with conducting a financial transaction involving the proceeds of specified unlawful activity.

The indictment reads as follows:

51.  The allegations contained in paragraphs 1 through 8, 10 through 40, and 44 through 50 are realleged and incorporated as if fully set forth in this paragraph.

52.  On or about the dates set forth below, within the Eastern District of New York and elsewhere, defendant DOV SHELLEF, knowing that the property involved in financial transactions represented the proceeds of some form of unlawful activity, did knowingly and intentionally conduct and attempt to conduct financial transactions affecting interstate and foreign commerce which in fact involved the proceeds of specified unlawful activity, to wit, wire fraud in violation of 18 U.S.C. § 1343, with the intent to promote the carrying on of the specified unlawful activity, in that SHELLEF transferred and caused to be transferred funds by wire transfer in the approximate amounts listed below:

| COUNT | DATE | AMOUNT | ORIGIN | DESTINATION |
|-------|------|--------|--------|-------------|
| 46 | 11/30/98 | $64,170.00 | HSBC, Great Neck, NY | Corestates Bank, Philadelphia, PA |
| 47 | 1/20/99 | $64,170.00 | HSBC, Great Neck, NY | Corestates Bank, Philadelphia, PA |
| 48 | 3/11/99 | $64,170.00 | HSBC, Great Neck, NY | Corestates Bank, Philadelphia, PA |

| 49 | 4/27/99 | $64,170.00 | HSBC, Great Neck, NY | Corestates Bank, Philadelphia, PA |
| 50 | 6/14/99 | $60,670.00 | HSBC, Great Neck, NY | Corestates Bank, Philadelphia, PA |

Section 1956 of Title 18, United States Code, deals with participation in a financial transaction that involves property constituting the proceeds of specified unlawful activity. Specifically, section 1956(a)(1)(A)(i) provides:

> Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—
>
> (i) with intent to promote the carrying on of specified unlawful activity
>
> [shall be guilty of a crime].

<u>Counts Forty-six to Fifty:  Money Laundering</u>
<u>Elements of the Offense</u>

In order to prove the crime of money laundering in violation of section 1956(a)(1)(A)(i), the government must establish beyond a reasonable doubt each of the following elements:

First, that the defendant conducted (or attempted to conduct) a financial transaction involving property constituting the proceeds of specified unlawful activity, namely wire fraud.

Second, that the defendant knew that the property involved in the financial transaction was the proceeds of some form of unlawful activity.

Third, that the defendant acted with the intent to promote the carrying on of specified unlawful activity.

<u>Counts Forty-Six to Fifty:  Money Laundering</u>
<u>First Element–Financial Transaction Involving Proceeds of</u>
<u>Unlawful Activity</u>

The first element which the government must prove beyond a
reasonable doubt is that the defendant conducted (or attempted to
conduct) a financial transaction involving property constituting
the proceeds of specified unlawful activity, namely wire fraud in
violation of 18 U.S.C. § 1343.  A number of these terms require
definition.

The term "conducts" includes initiating, concluding, or
participating in initiating or concluding a transaction.

A "transaction" includes a purchase, sale, loan, pledge,
gift, transfer, delivery, or other disposition of property.

The term "financial transaction" means a transaction
involving a financial institution which is engaged in, or the
activities of which affect, interstate or foreign commerce in any
way or degree, or a transaction which in any way or degree
affects interstate or foreign commerce and involves the movement
of funds by wire or other means, or involves one or more monetary
instruments, or involves the transfer of title to any real
property, vehicle, vessel or aircraft.

A "transaction involving a financial institution" includes a
deposit, withdrawal, transfer between accounts, exchange of
currency, loan, extension of credit, purchase of sale of any
stock, bond, certificate of deposit, or other monetary
instrument, use of a safe deposit box, or any other payment,
transfer, or delivery by, through, or to a financial institution

94

by whatever means.

The term "interstate or foreign commerce" means commerce between any combination of states, territories or possessions of the United States, or between the United States and a foreign country.

The term "monetary instrument" includes, among other things, coin or currency of the United States or any other country, personal checks, traveler's checks, cashier's checks, bank checks, money orders, and investment securities or negotiable instruments in bearer form or otherwise in such form that title thereto passes upon delivery.

The term "proceeds" means any property, or any interest in property, that someone acquires or retains as profits resulting from the commission of the specified unlawful activity. Proceeds can be any kind of property, not just money.  However, in order to be considered <u>proceeds</u> of specific unlawful activity, the property must represent the <u>profits</u> of the underlying crime, not just its gross revenue.  In other words, "proceeds" mean net profits derived from a crime, and not simply money that was received during the course of the commission of a crime.  If a person uses the money derived from a crime to defray the expenses of that same crime, you cannot find that he or she was using profits to do so.  Until a person pays the expenses of his or her crime, there are no profits.  Also, the illegal laundering of funds described here cannot occur in the same financial transaction through which those funds first became tainted by

95

crime.  The Government has the burden of proving beyond a reasonable doubt that the funds involved in each of the financial transactions alleged in the indictment constituted the "proceeds of specified unlawful activity" as opposed to being funds derived from some other source.

The term "specified unlawful activity" means any one of a variety of offenses defined by the statute.  In this case, the government has alleged that the funds in question were the proceeds of wire fraud.  I instruct you that, as a matter of law, wire fraud falls within that definition.  However, it is for you to determine whether the funds were the proceeds of that unlawful activity.  I have already advised you on the elements of wire fraud.

<u>Counts Forty-Six to Fifty:  Money Laundering</u>
<u>Second Element-Knowledge That Property Was Proceeds of Unlawful</u>
<u>Activity</u>

The second element which the government must prove beyond a reasonable doubt is that the defendant knew that the property involved in the financial transaction was the proceeds of some form of unlawful activity, namely wire fraud.

To satisfy this element, the government must prove that the defendant knew that the property involved in the transaction represented proceeds from some form, though not necessarily which form, of activity that constitutes a felony under state, federal, or foreign law.  Thus, the government does not have to prove that the defendant specifically knew that the property involved in the transaction represented the profits of the wire fraud or any other specific offense.  The government only has to prove that the defendant knew it represented the profits of some illegal activity which was a felony.  I instruct you as a matter of law that wire fraud is a felony under federal law.

<u>Counts Forty-Six to Fifty:  Money Laundering</u>
<u>Third Element-Intent to Promote Unlawful Activity</u>

The third element which the government must prove beyond a reasonable doubt is that the defendant acted with intent to promote the carrying on of specified unlawful activity, namely wire fraud.

To act intentionally means to act willfully, not by mistake or accident, with the deliberate purpose of promoting, facilitating or assisting the carrying on of wire fraud.  If you find that the defendant acted with the intention or deliberate purpose of promoting, facilitating, or assisting in the carrying on of wire fraud, then the third element is satisfied.

In determining the question of whether the defendant acted with the specific intent to promote wire fraud, you must find that the government has presented direct proof of an intent to promote such illegal activity, or proof that the charged financial transaction, on its face, indicates an intent to promote such illegal activity.  In the absence of direct proof of this specific intent, you cannot find that the government has met its burden on this element.  In other words, the defendant cannot be convicted of using funds, even if illegally obtained, to pay the operating expenses of an otherwise legitimate business enterprise.

If you find, however, that the government presented direct proof, beyond a reasonable doubt, of an intent to promote wire

fraud by engaging in the charged financial transaction then the third element is satisfied.

<u>Counts Fifty-one to Eighty-six:  Money Laundering</u>
<u>The Indictment and the Statute</u>

On Counts Fifty-One to Eighty-Six, the defendant is also charged with conducting a financial transaction involving the proceeds of specified unlawful activity. The indictment reads in relevant part as follows:

53.  The allegations contained in paragraphs 1 through 8, 10 through 40, 42, and 44 through 50 are realleged and incorporated as if fully set forth in this paragraph.

54.  On or about the dates set forth below, within the Eastern District of New York and elsewhere, defendant DOV SHELLEF, knowing that the property involved in financial transactions represented the proceeds of some form of unlawful activity, did knowingly and intentionally conduct and attempt to conduct financial transactions affecting interstate and foreign commerce which in fact involved the proceeds of specified unlawful activity, to wit, wire fraud in violation of 18 U.S.C. § 1343, (i) with the intent to engage in conduct constituting a violation of 26 U.S.C. § 7206; and (ii) knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of the specified unlawful activity, in that SHELLEF transferred and caused to be transferred funds by cashiers check and by wire transfer in the approximate amounts listed below:

| COUNT | DATE | AMOUNT | ORIGIN | DESTINATION |
|-------|------|--------|--------|-------------|
| 51 | 3/16/99 | $66,240.00 | Bank of Commerce, Haywood, CA Cashiers Check | North Fork Bank, Great Neck, NY |
| 52 | 8/26/99 | $22,080.00 | Bank of Commerce, Haywood, CA Wire | Commercial Bank of NY, Great Neck, NY |

100

| COUNT | DATE | AMOUNT | ORIGIN | DESTINATION |
|-------|------|--------|--------|-------------|
| 53 | 8/31/99 | $22,080.00 | Bank of Commerce, Haywood, CA Wire | Commercial Bank of NY, Great Neck, NY |
| 54 | 9/14/99 | $22,080.00 | Bank of Commerce, Haywood, CA Wire | Commercial Bank of NY, Great Neck, NY |
| 55 | 9/15/99 | $22,080.00 | Bank of Commerce, Haywood, CA Wire | Commercial Bank of NY, Great Neck, NY |
| 56 | 9/21/99 | $22,080.00 | Bank of Commerce, Haywood, CA Wire | Commercial Bank of NY, Great Neck, NY |
| 57 | 9/24/99 | $22,080.00 | Bank of Commerce, Haywood, CA Wire | Commercial Bank of NY, Great Neck, NY |
| 58 | 9/30/99 | $22,080.00 | Bank of Commerce, Haywood, CA Wire | Commercial Bank of NY, Great Neck, NY |
| 59 | 10/04/99 | $22,080.00 | Bank of Commerce, Haywood, CA Wire | Commercial Bank of NY, Great Neck, NY |
| 60 | 10/12/99 | $22,080.00 | Bank of Commerce, Haywood, CA Wire | Commercial Bank of NY, Great Neck, NY |
| 61 | 10/14/99 | $22,080.00 | Bank of Commerce, Haywood, CA Wire | Commercial Bank of NY, Great Neck, NY |
| 62 | 10/18/99 | $22,080.00 | Bank of Commerce, Haywood, CA Wire | Commercial Bank of NY, Great Neck, NY |
| 63 | 10/19/99 | $22,080.00 | Bank of Commerce, Haywood, CA Wire | Commercial Bank of NY, Great Neck, NY |
| 64 | 10/21/99 | $248,300.00 | Commercial Bank of NY, Great Neck, NY Wire | Credit Suisse, Zurich, Switzerland |
| 65 | 10/22/99 | $22,080.00 | Bank of Commerce, Haywood, CA Wire | Commercial Bank of NY, Great Neck, NY |

101

| COUNT | DATE | AMOUNT | ORIGIN | DESTINATION |
|-------|------|--------|--------|-------------|
| 66 | 10/27/99 | $22,080.00 | Bank of Commerce, Haywood, CA Wire | Commercial Bank of NY, Great Neck, NY |
| 67 | 10/29/99 | $44,160.00 | Bank of Commerce, Haywood, CA Wire | Commercial Bank of NY, Great Neck, NY |
| 68 | 11/02/99 | $22,080.00 | Bank of Commerce, Haywood, CA Wire | Commercial Bank of NY, Great Neck, NY |
| 69 | 11/04/99 | $10,000.00 | Commercial Bank of NY, Great Neck, NY Wire | Bank Leumi, Israel |
| 70 | 11/05/99 | $22,080.00 | Bank of Commerce, Haywood, CA Wire | Commercial Bank of NY, Great Neck, NY |
| 71 | 11/12/99 | $22,080.00 | Bank of Commerce, Haywood, CA Wire | Commercial Bank of NY, Great Neck, NY |
| 72 | 11/18/99 | $22,080.00 | Bank of Commerce, Haywood, CA Wire | Commercial Bank of NY, Great Neck, NY |
| 73 | 11/22/99 | $22,080.00 | Bank of Commerce, Haywood, CA Wire | Commercial Bank of NY, Great Neck, NY |
| 74 | 11/23/99 | $22,080.00 | Bank of Commerce, Haywood, CA Wire | Commercial Bank of NY, Great Neck, NY |
| 75 | 11/29/99 | $22,080.00 | Bank of Commerce, Haywood, CA Wire | Commercial Bank of NY, Great Neck, NY |
| 76 | 12/01/99 | $192,000.00 | Commercial Bank of NY, Great Neck, NY Wire | Credit Suisse, Zurich, Switzerland |
| 77 | 12/02/99 | $22,080.00 | Bank of Commerce, Haywood, CA Wire | Commercial Bank of NY, Great Neck, NY |

| COUNT | DATE | AMOUNT | ORIGIN | DESTINATION |
|-------|------|--------|--------|-------------|
| 78 | 12/07/99 | $22,080.00 | Bank of Commerce, Haywood, CA Wire | Commercial Bank of NY, Great Neck, NY |
| 79 | 12/13/99 | $22,245.00 | Bank of Commerce, Haywood, CA Wire | Commercial Bank of NY, Great Neck, NY |
| 80 | 12/16/99 | $22,080.00 | Bank of Commerce, Haywood, CA Wire | Commercial Bank of NY, Great Neck, NY |
| 81 | 12/20/99 | $22,080.00 | Bank of Commerce, Haywood, CA Wire | Commercial Bank of NY, Great Neck, NY |
| 82 | 12/28/99 | $22,080.00 | Bank of Commerce, Haywood, CA Wire | Commercial Bank of NY, Great Neck, NY |
| 83 | 1/5/00 | $192,000.00 | Commercial Bank of NY, Great Neck, NY Wire | Credit Suisse Zurich, Switzerland |
| 84 | 2/28/00 | $242,000.00 | Commercial Bank of NY, Great Neck, NY Wire | Credit Suisse, Zurich, Switzerland |
| 85 | 4/3/00 | $27,000.00 | Commercial Bank of NY, Great Neck, NY Wire | Bank Leumi, Israel |
| 86 | 6/1/00 | $125,000.00 | Commercial Bank of NY, Great Neck, NY Wire | Credit Suisse, Zurich, Switzerland |

On Counts Fifty-One to Eighty-Six, the defendant is charged with violating Section 1956 of Title 18, United States Code, which deals with participation in a financial transaction that involves property constituting the proceeds of specified unlawful activity.  Specifically, Section 1956(a)(1)(A)(ii) provides:

> Whoever, knowing that the property involved in a
> financial transaction represents the proceeds of

some form of unlawful activity, conducts or
attempts to conduct such a financial transaction
which in fact involves the proceeds of specified
unlawful activity—
(ii) with intent to engage in conduct constituting
a violation of section [7206] of the Internal
Revenue Code of 1986...
[is guilty of a crime.]

Section 1956(a)(1)(B)(i) provides:

Whoever, knowing that the property involved
in a financial transaction represents the
proceeds of some form of unlawful activity,
conducts or attempts to conduct such a
financial transaction which in fact involves
the proceeds of specified unlawful activity—
* * *
(B) knowing that the transaction is designed
in whole or in part-

(i) to conceal or disguise the nature,
the location, the source, the ownership,
or the control of the proceeds of
specified unlawful activity
[is guilty of crime].

104

<u>Counts Fifty-one through Eighty-six:  Money Laundering
1956(a)(1)(A)(ii) Elements of the Offense</u>

In order to prove the crime of money laundering in violation
of section 1956(a)(1)(A)(ii) on Counts Fifty-One to Eighty-Six,
the government must establish beyond a reasonable doubt each of
the following elements:

First, that the defendant conducted ( or attempted to
conduct) a financial transaction involving property constituting
the proceeds of specified unlawful activity, namely wire fraud.

Second, that the defendant knew that the property involved
in the financial transaction was the proceeds of some form of
unlawful activity.

Third, that the defendant acted with intent to engage in
conduct constituting a violation of Section 7206 of the Internal
Revenue Code.

I already instructed you on the first two elements in
connection with Counts Forty-Six to Fifty of the indictment, and
those instructions apply here, even though I will not repeat
them.  I will now instruct you on the third element.

The third element which the government must prove beyond a
reasonable doubt is that the defendant acted with intent to
engage in conduct constituting a violation of Section 7206 of the
Internal Revenue Code.  I have already instructed you on the
elements of a violation of 7206 in connection with Count Two of
the indictment, which apply here even though I am not repeating
them.  Unless you find that the government proved beyond a

reasonable doubt that the defendant is guilty of Count Two, you must find that this third element of Counts Fifty-One to Eighty-Six has not been satisfied and you must acquit the defendant on these counts under Section 1956(a)(1)(A)(ii).

However, I remind you that even if you find that the elements of Count Two have been met by the government beyond a reasonable doubt, you must still find that the government proved all of the other elements of Counts Fifty-One to Eighty-Six before you may enter a verdict of guilty on these counts.  If the government has failed to prove each of the elements of these counts beyond a reasonable doubt, you must acquit under Section 1956(a)(1)(A)(ii).

<u>Counts Fifty-One to Eighty-Six: Money Laundering</u>
<u>Section 1956(a)(1)(B)(i) elements of the offense</u>

In order to prove the crime of money laundering in violation of Section 1956(a)(1)(B)(i) on Counts Fifty-One to Eighty-Six, the government must establish beyond a reasonable doubt each of the following elements:

First, that the defendant conducted (or attempted to conduct) a financial transaction involving property constituting the proceeds of specified unlawful activity, namely wire fraud.

Second, that the defendant knew that the property involved in the financial transaction was the proceeds of some form of unlawful activity.

Third, that the defendant knew that the transaction was designed in whole or in part either to conceal or disguise the nature, location, source, ownership or control of the proceeds of specified unlawful activity.

<u>Counts Fifty-one through Eighty-six:  Money Laundering</u>
<u>First Element–Financial Transaction Involving Proceeds of</u>
<u>Unlawful Activity</u>

 The first element which the government must prove beyond a
reasonable doubt is that the defendant conducted (or attempted to
conduct) a financial transaction involving property constituting
the proceeds of specified unlawful activity, namely wire fraud.
These terms were defined in my instructions for Counts Forty-Six
to Fifty, which also apply here.

<u>Counts Fifty-One through Eighty-Six:  Money Laundering</u>
<u>Second Element–Knowledge That Property Was Proceeds of Unlawful</u>
<u>Activity</u>

The second element which the government must prove beyond a reasonable doubt is that the defendant knew that the property involved in the financial transaction was the proceeds of some form of unlawful activity.

To satisfy this element, the government must prove that the defendant knew that the property involved in the transaction represented proceeds from some form, though not necessarily which form, of activity that constitutes a felony under state, federal, or foreign law.  Thus, the government does not have to prove that the defendant specifically knew that the property involved in the transaction represented the profits of the wire fraud or any other specific offense.  The government only has to prove that the defendant knew it represented the profits of some illegal activity which was a felony.  I instruct you as a matter of law that wire fraud is a felony under federal law.

Counts Fifty-One through Eighty-Six:  Money Laundering
Third Element–Knowledge That Transaction Was Designed to Conceal
Origin of Property

The third element which the government must prove beyond a reasonable doubt is that the defendant acted with knowledge that the transaction was designed to conceal or disguise the nature, location, source, ownership, or control of the proceeds of specified unlawful activity, namely wire fraud.

If you find that the evidence establishes beyond a reasonable doubt that the defendant knew of the purpose of the particular transaction in issue, and that he knew that the transaction was either designed to conceal or disguise the true origin of the property in question, then this element is satisfied.

However, if you find that the defendant knew of the transaction but did not know that it was either designed to conceal or disguise the true origin of the property in question, but instead thought that the transaction was intended to further an innocent transaction, you must find that this element has not been satisfied and find the defendant not guilty.

Counts Fifty-One to Eighty-Six:
Unanimity

I have instructed you that on Counts Fifty-One to Eighty
Six, the government alleges that the defendant violated either
Section 1956(a)(1)(A)(ii) or 1956(a)(1)(B)(i).  In other words,
the government alleges that the defendant conducted a financial
transaction involving the proceeds of specified unlawful activity
and that the defendant acted with specific intent under either a
tax fraud theory OR a concealment theory as I just explained them
to you.  The government is not required to prove that the
defendant acted with both of the purposes charged in the third
elements of Counts Fifty-One to Eighty-Six.  If the government
proves beyond a reasonable doubt that the defendant acted with
the specific intent under either a tax fraud theory or
concealment theory, and proves each of the other elements of
these counts beyond a reasonable doubt, you may find him guilty.
In order to find that the government has met its burden on the
third element of Counts Fifty-One to Eighty-Six, however, you
must all agree on the specific purpose (whether tax fraud or
concealment) that the government has proven beyond a reasonable
doubt.  If you cannot unanimously agree on at least one purpose
of this third element of Counts Fifty-One to Eighty-Six, you must
find the defendant not guilty on these counts.

111

## PART III:   RULES REGARDING DELIBERATIONS

Finally, a few closing remarks.

Keep in mind that nothing I have said in these instructions is intended to suggest to you in any way what I think your verdict should be.   That is entirely for you to decide.

By way of reminder, I charge you once again that it is your responsibility to judge the facts in this case only from the evidence presented during the trial and to apply the law as I have given it to you to the facts as you find them from the evidence.

I instruct you that the decision you reach as to each element for each charge in the indictment must be unanimous; that is, all 12 of you must agree on every element in every count.   I also instruct you to consider each count of the indictment in which the defendant is charged separately.   For example, you may find him guilty of one count and not guilty of another, or you may find him guilty of all counts or not guilty of any.   But again, the verdict on each element and each count must be unanimous.

When you retire, it is your duty to discuss the case for the purpose of reaching a verdict.   Each of you must decide the case for yourself, but should only do so after considering all the evidence, listening to the views of your fellow jurors, and discussing it fully.   It is important that you reach a verdict if you can do so conscientiously.   You should not hesitate to

112

reconsider your opinions from time to time and to change them if you are convinced that they are wrong. However, do not surrender an honest conviction as to weight and effect of the evidence simply to arrive at a verdict.

Remember also that your verdict must be based solely on the evidence in the case and the law as the court has given it to you, not on anything else. Opening statements, closing arguments, or other statements or arguments of counsel are not evidence. If your recollection of the facts differs from the way counsel has stated the facts to be, then your recollection controls.

And, finally, bear in mind that the government has the burden of proof and that you must be convinced of the defendant's guilt beyond a reasonable doubt to return a guilty verdict. If you find that this burden has not been met, you must return a verdict of not guilty.

The question of possible punishment of the defendant is of no concern to the jury and should not, in any sense, enter into or influence your deliberations. The duty of imposing sentence rests exclusively upon the court. Your function is to weigh the evidence in the case and to determine whether or not the defendant is guilty beyond a reasonable doubt, solely upon the basis of such evidence. Under your oath as jurors, you cannot allow a consideration of the punishment which may be imposed upon the defendant, if he is convicted, to influence your verdict, in any way, or, in any sense, enter into your deliberations.

113

Under your oath as jurors you are not to be swayed by sympathy for one side or the other.  You are to be guided solely by the evidence in this case, and the crucial question that you must ask yourselves as you sift through the evidence is: has the government proven the guilt of the defendant beyond a reasonable doubt?

It is for you alone to decide whether the government has proven that the defendant is guilty of the crimes charged solely on the basis of the evidence and subject to the law as I charge you.  It must be clear to you that once you let fear, prejudice, bias or sympathy interfere with your thinking there is a risk that you will not arrive at a true and just verdict.

If you have a reasonable doubt as to the defendant's guilt, you must find a verdict of acquittal.  But on the other hand, if you should find that the government has met its burden of proving the defendant's guilt beyond a reasonable doubt, you should not hesitate because of sympathy or any other reason to render a verdict of guilty.

When you get into the jury room, before you begin your deliberations, your first act will be to select one of you to be the foreperson.  The foreperson will be responsible for signing all communications to the court and for handing them to the court security officer during your deliberations, but of course his or her vote is entitled to no greater weight than any other juror.

During the trial, I permitted the taking of notes by those of you who wished to do so.  At that time I pointed out that

114

while you could take notes, there is no need for your doing so, because the court reporter takes down everything that is said in the courtroom and during your deliberations the court reporter will read back to you any portion of the transcript you may ask for.

For those of you who did take notes during the trial, I point out to you and your fellow jurors that your notes are simply an aid to memory for the particular juror who takes the notes.  You are instructed that your notes are only a tool to aid your own individual memory and you should not compare your notes with other jurors in your deliberations.  Jurors who did not take notes should not be influenced by the fact that other jurors have taken notes.  Your notes are not evidence, may be inaccurate, and are by no means a complete recording of the trial testimony.  Any difference between a juror's recollection and another juror's notes should be settled by asking to have the court reporter to read back the transcript, for it is the court record rather than any juror's notes upon which the jury must base its determination of the facts and its verdict.

It is very important that you not communicate with anyone outside the jury room about your deliberations or about anything touching this case.  There is only one exception to this rule.  If it becomes necessary during your deliberations to communicate with me, you may send a note, through the court security officer, signed by your foreperson or by one or more members of the jury.  No member of the jury should ever attempt to communicate with me

115

except by a signed writing, and I will never communicate with any member of the jury on any subject touching the merits of the case other than in writing, or orally here in open court.  If you send any notes to the court, do not disclose anything about your deliberations.  Specifically, do not disclose to anyone - not even to me - how the jury stands, numerically or otherwise, on the question of the guilt or innocence of the defendant, until after you have reached a unanimous verdict or have been discharged.

If during your deliberations you want to see any of the exhibits, they will be sent to you in the jury room upon written request.  If you want any of the testimony read, that can also be done.  But, please remember that it is not always easy to locate what you might want, so be as specific as you possibly can in requesting exhibits or portions of testimony which you may want. If you request a readback of testimony, please be patient, as it may take some time to locate and agree upon the specific testimony required.

I have prepared a verdict sheet, which will be given to you. The verdict sheet is given to you to record your verdict after you have reached a verdict as to all counts in the indictment.

When you have reached a decision, have the foreperson sign the verdict form and put the date on it - and notify the marshal by note that you have reached a verdict.

I reiterate that any verdict you reach must be unanimous.

Your oath sums up your duty - and that is - without fear or

116

favor to any person, you will well and truly try the issues in this case according to the evidence given to you in court and the laws of the United States.

This concludes my instructions.  Thank you for your close and careful attention.  Members of the jury, you will now retire to deliberate after I swear in the Marshall.  I do ask that, as your first order of business, you elect a foreperson and send me a note, dated and timed, identifying that foreperson.